# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
_____

## No. 14-3858
_____

MELVIN MORRISS, III,

Plaintiff-Appellant,

v.

BNSF RAILWAY COMPANY,

Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
Civil Action No. 8:13CV24
The Hon. Richard G. Kopf, U.S.D.J., Presiding

BRIEF OF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
AS AMICUS CURIAE ON BEHALF OF APPELLANT MELVIN MORRISS
IN SUPPORT OF REVERSAL
_____

PATRICK D. LOPEZ
General Counsel

CAROLYN L. WHEELER
Acting Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

ANNE W. KING
Attorney

U.S. EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. NE, Fifth Floor
Washington, D.C. 20507
(202) 663-4699
anne.king@eeoc.gov
Attorneys for *amicus curiae*
 U.S. Equal Employment
 Opportunity Commission

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

STATEMENT OF INTEREST ............................................................................1

STATEMENT OF THE ISSUE ...........................................................................1

STATEMENT OF THE CASE .............................................................................2

   A.    Statement of Facts ...........................................................................2

   B.    District Court Decision ..................................................................10

SUMMARY OF THE ARGUMENT ..................................................................12

ARGUMENT .....................................................................................................13

   I.    The district court erred in granting summary judgment to BNSF because a reasonable jury could determine that BNSF failed to hire Morriss because it regarded him as having an actual or perceived impairment. ...............................13

     A.    The ADA amendments significantly altered the standard for regarded-as claims. ..............................................................................................14

     B.    A jury could find that BNSF failed to hire Morriss based on an actual impairment—morbid obesity..............................................................16

     C.    A jury could conclude that BNSF failed to hire Morriss because of a perceived impairment. .....................................................................22

   II.    The district court incorrectly interpreted EEOC's interpretive guidance stating that "characteristic predisposition to illness or disease" is not an impairment. ..............................................................................................26

CONCLUSION ..................................................................................................31

i

# TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................................20

*BNSF Ry. Co. v. Feit*, 281 P.3d 225 (Mont. 2012). ........................... 2, 19

*Brown v. City of Jacksonville*, 711 F.3d 883 (8th Cir. 2013). .................... 13, 15, 16

*Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195 (2011)..........................................20

*Cook v. R.I. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17
  (1st Cir. 1993) ......................................................... 2, 21, 24

*Deas v. River West, L.P.*, 152 F.3d 471 (5th Cir. 1998) ..........................................30

*Doe v. N. Y. Univ.,* 666 F.2d 761 (2d Cir. 1981) ............................................. 24, 30

*EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688
  (E.D. La. 2011) ......................................................... 2, 12, 17

*EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561 (8th Cir. 2007) ...............................25

*EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006) ................. 11, 17

*Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997)................................. 17, 18

*Greenburg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258 (11th Cir. 2007)..............18

*Lescoe v. Pa. Dep't of Corr.*, 464 F. App'x 50 (3d Cir. 2012)................................18

*Lowe v. Am. Eurocopter*, *LLC*, No 1:10CV24-A-D, 2010 WL 5232523
  (N.D. Miss. Dec. 16, 2010)..................................................................20

*Martinson v. Kinney Shoe Corp.*, 104 F.3d 683 (4th Cir. 1997) .............................30

Appellate Case: 14-3858   Page: 3   Date Filed: 03/23/2015 Entry ID: 4257449

*Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273 (1987) ................................... 2, 29

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)..............................................15

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) ........................................20

*Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793 (8th Cir. 2014).................15

*Whittaker v. America's Car-Mart, Inc.*, No. 1:13CV108, 2014 WL 1648816
   (E.D. Mo. Apr. 24, 2014) ............................................................................... 19-20

## Statutes

42 U.S.C. § 12101 *et seq*...........................................................................................1

42 U.S.C. § 12102(1) ................................................................................................19

42 U.S.C. § 12102(1)(C)..................................................................................... 13, 14

42 U.S.C. § 12102(3)(A)..................................................................................... 14-15, 23

42 U.S.C. § 12102(3)(B)............................................................................................14

42 U.S.C. § 12102(4)(A)..................................................................................... 14, 19, 29

42 U.S.C. § 12112(a) ................................................................................................13

42 U.S.C. § 12113(a) ................................................................................................25

Pub. L. 110-325........................................................................................................1

Pub. L. No. 110-325 § 2(b)(3) ........................................................................... 16, 29

Pub. L. No. 110-325 § 4(a) ......................................................................................14

Appellate Case: 14-3858     Page: 4     Date Filed: 03/23/2015 Entry ID: 4257449

**Regulations**

29 C.F.R. § 1630.2(h) ............................................................. 16, 25

29 C.F.R. § 1630.2(h)(1) ......................................................... 10, 17

29 C.F.R. § 1630.2(l)(1).................................................................15

29 C.F.R. Pt. 1630, App. § 1630.2(h) ........................................ passim

29 C.F.R. Pt. 1630, App. § 1630.2(j) .............................................20

29 C.F.R. Pt. 1630, App. § 1630.2(l) .............................................15

56 Fed. Reg. 35,726, 35,741 (July 26, 1991).................................20

**Other Authorities**

*EEOC Compliance Manual* § 902.2 ....................................... 21, 27-28

*The Merck Manual of Diagnosis and Therapy*
  (Robert Berkow ed., 15th ed. 1987)......................................21

*The Merck Manual of Diagnosis and Therapy*
  (Robert Berkow ed., 16th ed. 1992)......................................22

*The Merck Manual of Diagnosis and Therapy*
  (Robert S. Porter, ed., 19th ed. 2011) ............................... 5, 21

Appellate Case: 14-3858    Page: 5    Date Filed: 03/23/2015 Entry ID: 4257449

# STATEMENT OF INTEREST

The Equal Employment Opportunity Commission ("EEOC") is charged by Congress with interpreting, administering, and enforcing Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act of 2008, Pub. L. 110-325 ("ADAAA"). In this appeal, plaintiff-appellant challenges the district court's dismissal of his ADA claim that defendant-appellee discriminated against him because it regarded him as disabled. This appeal raises important questions regarding the scope of regarded-as claims after the ADA amendments and whether morbid obesity may be a cognizable ADA impairment. Additionally, this appeal raises questions about the correct interpretation of an EEOC regulation and EEOC's interpretive guidance. Because these issues are important to the effective enforcement of the ADA, the Commission respectfully offers its views to the Court. *See* Fed. R. App. P. 29(a).

# STATEMENT OF THE ISSUE[1]

Whether the district court erred in dismissing plaintiff-appellant's regarded-as claim under the ADA although defendant-appellee admittedly declined to hire him because of his morbid obesity and its assumption—based on his morbid

---

[1] The Commission takes no position on any other issues in this appeal.

1

obesity—that he had a high risk for developing a health condition that could lead to sudden incapacitation.

Apposite cases: *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273 (1987); *Cook v. R.I. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17 (1st Cir. 1993); *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688 (E.D. La. 2011); *BNSF Ry. Co. v. Feit*, 281 P.3d 225 (Mont. 2012).

## STATEMENT OF THE CASE

### A.    Statement of Facts

In March 2011, plaintiff-appellant Melvin Morriss applied for several diesel mechanic positions (also known as machinist positions) at defendant-appellee BNSF Railway Company (BNSF), including a position in Alliance, Nebraska. App. 410 (Morriss Dep. 47:19-48:20). Morriss had experience working in diesel mechanics at a prior position, where he was able to perform his job duties without accommodations. App. 410, 421 (Morriss Dep. 48:1-6; 91:21-93:9). BNSF considers the diesel mechanic positions safety-sensitive positions. App. 528 (Morriss Dep. Ex. 11).

In April 2011, BNSF invited Morriss to interview for the Alliance position. App. 410-11 (Morriss Dep. 49:25-50:4). On April 29, 2011, Morriss passed a skills test and interviewed in person with a panel of BNSF representatives, including

2

BNSF Human Resources Manager Mali Voloshin-Kile. App. 411, 588-89 (Morriss Dep. 50:12-24; Voloshin-Kile Dep. 40:2-41:1). At the interview, Voloshin-Kile indicated that BNSF had available diesel mechanic positions for all candidates invited to interview who passed the interview process and skills test. App. 411 (Morriss Dep. 50:16-18).

On May 3, 2011, BNSF extended Morriss a conditional offer of employment via email. App. 478 (Morriss Dep. Ex. 3). BNSF's email stated that the offer was contingent on the outcome of a preemployment background screening, including review of a medical history questionnaire and a physical examination. *Id.* On BNSF's medical history questionnaire, Morriss indicated that his health was generally good and disclosed no limitations in performing daily activities or work. App. 863-64 (Clark Dep. Ex. 30). He indicated that he did not have sleep apnea and reported no cardiovascular or heart problems or history of stroke. App. 859-60, 862 (Clark Dep. Ex. 30). In response to a question about diabetes, Morriss explained that a doctor had diagnosed him as diabetic or prediabetic in 2009, but another doctor concluded in January 2011 that he was not diabetic. App. 858 (Clark Dep. Ex. 30). Morriss also indicated that he had never experienced low blood sugar. App. 859 (Clark Dep. Ex. 30). Morriss reported taking phentermine, an appetite suppressant. App. 862 (Clark Dep. Ex. 30). After Morriss submitted the

3

questionnaire, BNSF requested additional medical documents, and Morriss had his physician send BNSF recent medical records. App. 411 (Morriss Dep. 51:17-25).

On or around May 11, 2011, Morriss underwent a BNSF physical examination. App. 411, 867 (Morriss Dep. 51:23-52:15; Clark Dep. Ex. 31). Morriss's height and weight were measured and he passed an industrial physical capacity services test, which involved performing exercises while hooked up to a machine. App. 411, 811, 867 (Morriss Dep. 52:1-15; Clark Dep. 76:9-19; Clark Dep. Ex. 31).

On May 18, 2011, Morriss received an email from BNSF's medical department informing him that BNSF had decided not to hire him for the diesel mechanic position because of his body mass index (BMI). App. 528 (Morriss Dep. Ex. 11). The email stated, "The BNSF Medical Review Officer has decided that you are <u>Not currently qualified</u> for the safety sensitive Machinist position due to significant health and safety risks associated with Class 3 obesity (Body Mass Index of 40 or greater)." *Id.* (emphasis in original).

During the May 11 BNSF physical examination, Morriss's weight was measured at 281 or 285 pounds, which corresponded to a BMI of 40.3 or 40.9 based on Morriss's height of 70 inches. App. 869 (Clark Dep. Ex. 32). BMI is a common measure of obesity, and BMI of 40 or greater is known by various terms,

4

including "Class III obesity," "morbid obesity," "extreme obesity," and "clinically severe obesity." App. 746-47, 1296, 1333, 1468, 1473, 1585 (Clark Dep. 11:16-12:20; Jarrard Dep. II Ex. 3 at 1, 38; Jarrard Dep. II Ex. 4 at 55, 60, 171); *see also The Merck Manual of Diagnosis and Therapy* 59 tbl.5-2 (Robert S. Porter, ed., 19th ed. 2011) (BMI over 40 is "extremely obese").

According to BNSF, Morriss was not medically qualified for the diesel mechanic position. App. 769-70 (Clark Dep. 34:11-35:2). BNSF assesses medical qualification separately from candidates' qualifications to perform a position. App. 772-73 (Clark Dep. 37:14-38:9). Dr. Sharon Clark, a medical review officer at BNSF, made the determination that Morriss was not medically qualified. App. 769 (Clark Dep. 34:11-23). Dr. Clark disqualified Morriss based on a BNSF practice specifying that individuals with a BMI of 40 or greater could not be medically qualified for safety-sensitive positions, such as the diesel mechanic position. App. 769-71 (Clark Dep. 34:21-36:25). This practice was unwritten; Dr. Michael Jarrard, who is now BNSF's Chief Medical Officer, verbally communicated the practice to Dr. Clark. App. 777-79, 1152 (Clark Dep. 42:17-43:6; 44:5-13; Jarrard Dep. I 26:9-16).

Dr. Clark reached this determination solely by reviewing medical documents; she did not meet Morriss or physically examine him. App. 786-87

5

(Clark Dep. 51:21-52:25). The medical documents Dr. Clark reviewed included Morriss's results from the May 11 physical examination (including his height and weight measurements), his responses to BNSF's medical history questionnaire, and recent medical records from Morriss's physician. App. 815-16, 857-82 (Clark Dep. 80:20-81:11; Clark Dep. Exs. 30, 31, 32). Other than BMI over 40, Dr. Clark could not recall any other reason she medically disqualified Morriss. App. 789-90 (Clark Dep. 54:12-55:9). She did not base her determination on Morriss's medical history questionnaire response indicating that a previous doctor diagnosed him as diabetic or prediabetic. App. 797 (Clark Dep. 62:10-16). After Dr. Clark medically disqualified Morriss, BNSF removed Morriss from processing for the diesel mechanic position. App. 933 (Kowalkowski Dep. 51:1-3).

BNSF's Chief Medical Officer, Dr. Jarrard, whom BNSF also designated as its expert witness, explained that the company medically disqualifies applicants with Class III obesity for safety-sensitive positions because it believes they have an increased risk of developing certain health conditions. App. 1156-59 (Jarrard Dep. I. 30:21-33:11). Dr. Jarrard testified that BNSF is particularly concerned with "health conditions that can lead to sudden incapacitation," especially heart disease, which may cause "sudden cardiac death," diabetes, which may cause hypoglycemic episodes, stroke, which may cause loss of movement, and sleep

6

apnea, which may cause excessive daytime sleepiness. *Id.* According to Dr.

Jarrard, "[t]he probability that people with Class III obesity will develop one of

these medical conditions is so high it's unacceptable to us to accept that level of

risk in these safety sensitive jobs." App. 1163 (Jarrard Dep. I 37:3-7). BNSF relied

on publications by the National Heart, Lung, and Blood Institute at the National

Institutes of Health (NIH-NHLBI) as authority for its determination that BMI of 40

or greater correlates with a particularly high risk of developing certain diseases.

App. 1237-39, 1286-1643 (Jarrard Dep. II 14:2-16:18; Jarrard Dep. II Exs. 3 & 4).

Dr. Jarrard testified that he does not believe obesity—including Class III obesity—

is a disease because he views it as "lifestyle related," but he acknowledged that the

American Medical Association recently recognized obesity as a disease. App.

1150-51, 1211 (Jarrard Dep. I 24:14-25:16; 85:3-15).

However, BNSF does medically qualify applicants with heart disease,

diabetes, sleep apnea, and other "health conditions that can lead to sudden

incapacitation" for safety-sensitive positions. Both Dr. Clark and Dr. Jarrard

acknowledged that BNSF conducts an individualized assessment of applicants with

health conditions correlated with incapacitation, including diabetes, sleep apnea, or

past history of heart attack or stroke. App. 783-85, 826, 1152-53, 1184-85 (Clark

Dep. 48:1-15; 49:2-50:3; 91:2-20; Jarrard Dep. I 26:2-27:1; 58:23-59:12). For

7

applicants with these health conditions, BNSF typically requests additional medical documentation and makes a case-by-case medical qualification decision. App. 784-85, 1184-85 (Clark Dep. 49:2-50:3; Jarrard Dep. I 58:23-59:12). BNSF bases that decision on several factors, including the applicant's current health condition and treatment regime, whether an active condition (such as diabetes) is well controlled, and how long ago a past event (such as a stroke) occurred. App. 784-85, 826, 1185 (Clark Dep. 49:2-50:3; 91:2-20; Jarrard Dep. I 59:6-12).

BNSF also medically qualifies obese applicants with a BMI lower than 40— including, for example, candidates with a BMI of 39—for safety-sensitive positions. App. 1153-54 (Jarrard Dep. I 27:18-28:19). For obese individuals with a BMI lower than 40, BNSF makes a case-by-case determination based on additional medical documentation, such as results of a sleep study to assess sleep apnea risk or evaluations of cardiac risk and glucose levels. *Id.* And, BNSF also permits current employees with Class III obesity who work in non-safety-sensitive positions to transfer to safety-sensitive positions—again, after a case-by-case determination based on additional medical documentation. App. 1178-80 (Jarrard Dep. I 52:25-54:22). Dr. Jarrard acknowledged that current employees with Class III obesity face the same health risks as applicants with Class III obesity. App. 1182 (Jarrard Dep. I 56:4-18).

Appellate Case: 14-3858    Page: 13    Date Filed: 03/23/2015 Entry ID: 4257449

At the time BNSF made Morriss's medical disqualification decision, it had no reason to believe that Morriss had diabetes, coronary disease, sleep apnea, history of stroke, or excessive daytime sleepiness. App. 824-25, 1164-65 (Clark Dep. 89:18-90:17; Jarrard Dep. I 38:5-39:18). Around the time of his application to BNSF Morriss's physician had not diagnosed him with diabetes, sleep apnea, or cardiovascular disease, but Morriss has since developed diabetes. App. 1022-24, 1033-34, 1036 (Pees Dep. 23:19-25:4; 34:12-35:3; 37:21-23). Dr. Clark acknowledged that nothing in Morriss's medical documentation led her to believe he could not perform the essential functions of the job, and Dr. Jarrard could not identify any tasks Morriss could not perform because of his BMI. App. 819-20, 1174 (Clark Dep. 84:21-85:12; Jarrard Dep. I 48:20-22).

Morriss's medical records from 2011 and 2012 for the most part indicate a BMI above 40, which corresponds to a weight of 278 pounds and above at Morriss's height. App. 873-80, 1670-71 (Clark Dep. Ex. 32; Pl.'s Opp. Mot. Summ. J. Ex. B). The weight range for an individual of Morriss's height with normal BMI is between 132 and 174 pounds, with a mid-point of 153 pounds. App. 1296, 1341 (Jarrard Dep. II Ex. 3 at 1, 46). Morriss has sought medical attention for his obesity since at least 2009, and his treatment regime has included exercise

9

and periodically taking prescription medication for appetite suppression. App. 402, 873-80 (Morriss Dep. 14:5-9; Clark Dep. Ex. 32).

## B.  District Court Decision

Morriss alleged that BNSF discriminated against him under the Americans with Disabilities Act (1) on the basis of an actual disability, morbid obesity; and (2) because BNSF regarded him as disabled. The district court granted summary judgment to BNSF on Morriss's claims and denied Morriss's motion for summary judgment on his regarded-as claim. App. 1786.

The district court granted summary judgment on Morriss's actual disability claim on the rationale that Morriss could not show he had an impairment under the ADA. App. 1785. Relying on an EEOC regulation and EEOC interpretive guidance, the district court concluded that Morriss was required to show that his morbid obesity was caused by a physiological disorder. App. 1783-84. The court concluded that Morriss could not show he had an underlying physiological disorder, and therefore held that he could not establish discrimination based on an actual disability. App. 1785.

First, the district court cited 29 C.F.R. § 1630.2(h)(1), which provides that ADA impairments include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." App. 1783-

10

84. According to the district court, this definition is "consistent with" a requirement that employees must show morbid obesity stems from "a physiological condition." *Id.* (citing *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006)).

The district court then turned to EEOC's interpretive guidance describing "characteristics that are not impairments." The relevant passage provides:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder. The definition, likewise, does not include characteristic predisposition to illness or disease.

29 C.F.R. Pt. 1630, App. § 1630.2(h).

The district court analyzed the provision that "[t]he definition of the term 'impairment' does not include physical characteristics such as . . . weight . . . that [is] within the 'normal' range and [is] not the result of a physiological disorder." *Id.* In the district court's view, this means that "a person's weight can be an impairment when it is *both* (1) outside 'normal' range *and* (2) the result of a physiological disorder." App. 1784 n.7 (emphasis added). The district court acknowledged that another district court construed EEOC's interpretive guidance

11

quite differently, concluding instead that "the requirement for a physiological cause is only required when a[n] [employee's] weight is *within the normal range*." *Id.* (quoting *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688, 694 (E.D. La. 2011) (emphasis added)).

The district court also granted summary judgment on Morriss's regarded-as claim. Here, the district court again relied on EEOC's interpretive guidance. The district court focused on the language stating that "[t]he definition [of impairment] does not include characteristic predisposition to illness or disease." 29 C.F.R. Pt. 1630, App. § 1630.2(h). The district court emphasized that BNSF justified denying Morriss employment based on its assumption that he was at high risk of developing future health conditions. App. 1785-86. The district court therefore concluded that BNSF did not regard Morriss as having an impairment because his supposed risk of developing health conditions qualified as "characteristic predisposition to illness or disease." *Id.*

## SUMMARY OF THE ARGUMENT

Applying a de novo standard of review, this Court should reverse the district court's grant of summary judgment to BNSF. BNSF admittedly declined to hire Morriss because of his morbid obesity. A reasonable jury could find that BNSF regarded Morriss as having an impairment because it premised its hiring decision

12

on Morriss's morbid obesity, an actual impairment under the ADA. In the Commission's view, an individual is not required to show an underlying physiological cause to establish the impairment of morbid obesity. A jury could also reasonably determine that BNSF perceived Morriss as having an impairment because it justified its failure to hire Morriss on its assumption that, because of his obesity, he faced an especially high risk of developing health conditions that may cause sudden incapacitation. In ruling otherwise, the district court erroneously interpreted EEOC's interpretive guidance stating that a "characteristic predisposition to illness or disease" is not an impairment.

## ARGUMENT

**I. The district court erred in granting summary judgment to BNSF because a reasonable jury could determine that BNSF failed to hire Morriss because it regarded him as having an actual or perceived impairment.**

To establish disability discrimination under the ADA, Morriss must show that (1) he is a "qualified individual"; (2) who suffered discrimination; (3) "on the basis of disability." 42 U.S.C. § 12112(a); *see also Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013). The third prong of the statutory definition of disability provides that an individual has a "disability" under the ADA if he is "regarded as having [] an impairment." 42 U.S.C. § 12102(1)(C). It is undisputed

13

that BNSF denied Morriss employment because it medically disqualified him

based on his BMI, and the parties agree that Morriss was otherwise qualified for

the diesel mechanic position. Therefore, the primary issue on appeal is whether

BNSF regarded Morriss as having an impairment based on his morbid obesity.[2]

## A. The ADA amendments significantly altered the standard for regarded-as claims.

The ADA amendments emphasized that "[t]he definition of disability . . .

shall be construed in favor of broad coverage of individuals." Pub. L. No. 110-325

§ 4(a) (codified at 42 U.S.C. § 12102(4)(A)). Accordingly, the ADAAA revised

the third prong of the statutory definition of disability, modifying the standard for

regarded-as claims. 42 U.S.C. § 12102(1)(C). As amended, the statute provides

that an individual may establish disability under the regarded-as prong "if the

individual establishes that he or she has been subjected to [discrimination] . . .

because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." 42 U.S.C. §

---

[2] Regarded-as coverage does not apply to "impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* In this case, Morriss has provided evidence that his morbid obesity persisted for more than six months, and that it was a significant health condition for which he sought medical treatment over several years.

Appellate Case: 14-3858    Page: 19    Date Filed: 03/23/2015 Entry ID: 4257449

12102(3)(A); 29 C.F.R. § 1630.2(l)(1). *See also Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014) (articulating amended standard).

The amended standard differs sharply from the pre-ADAAA standard. *See Brown*, 711 F.3d at 889 (explaining that "more restrictive requirements appli[ed] to pre-amendment ADA [regarded-as] claims," in contrast to post-amendment regarded-as claims). The amended statute takes the emphasis in the regarded-as analysis away from the level of the impairment that the individual experiences, or that the employer believes the individual experiences. Individuals may "establish coverage under the [amended] 'regarded as' prong by showing that they were treated adversely because of an [actual or perceived] impairment, without having to establish the covered entity's beliefs concerning the severity of the impairment." 29 C.F.R. Pt. 1630, App. § 1630.2(l) (internal citation omitted).

By contrast, before the ADAAA the inquiry focused on whether the employer perceived the individual to have a substantially limiting impairment. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) (explaining, before the ADAAA, that regarded-as liability could arise where (1) an employer mistakenly believed an employee had a substantially limiting impairment; or (2) an employer erroneously believed that an employee's non-limiting impairment substantially

15

limited a major life activity); *see also Brown*, 711 F.3d at 889. With the ADAAA, Congress expressly disavowed this approach. *See* Pub. L. No. 110-325 § 2(b)(3) ("reject[ing] the Supreme Court's reasoning in [*Sutton*] with regard to coverage under the third prong of the definition of disability," i.e., the regarded-as prong).

## B.    A jury could find that BNSF failed to hire Morriss based on an actual impairment—morbid obesity.

The district court determined that Morriss could not establish an ADA impairment because he could not show that his morbid obesity stemmed from a physiological basis. In the Commission's view, however, morbid obesity may constitute a cognizable impairment under ADAAA regardless of whether it results from an underlying physiological condition. Therefore, a jury could determine that BNSF failed to hire Morriss "because of an actual . . . impairment."

EEOC's ADA regulations define "physical or mental impairment" as "(1) [a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems . . . or; (2) [a]ny mental or psychological disorder." 29 C.F.R. § 1630.2(h). EEOC's interpretive guidance sheds further light on the regulatory definition, explaining that "[t]he definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range

16

and are not the result of a physiological disorder." 29 C.F.R. Pt. 1630, App. § 1630.2(h).

Contrary to the district court's reasoning, the most natural reading of EEOC's interpretive guidance is that a showing of a "physiological disorder" is required only if a person's weight is "within 'normal' range." *See Res. for Human Dev., Inc.*, 827 F. Supp. 2d at 694. The word "and" is conjunctive; therefore, the definition of impairment does not include weight within normal range that also does not result from a physiological disorder. When obesity rises to a significant level, it is no longer a "normal" deviation in weight, and it is not necessary to inquire whether the obesity stems from any other type of disorder. That is, obesity outside the normal range becomes the "condition" satisfying the regulatory definition of "impairment." 29 C.F.R. § 1630.2(h)(1). However, individuals whose weight falls within normal range would need to show a physiological disorder to establish an impairment. This reading of the interpretive guidance makes sense because the ADA does not require individuals to show the cause of their impairments.

In reasoning that a physiological basis is required, the district court relied on two pre-ADAAA amendments cases, *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997) and *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006).

17

In *Francis*, the plaintiff's obesity apparently did not rise to morbid obesity, and the court in fact suggested that no physiological basis is required with morbid obesity. 129 F.3d at 286 ("[An ADA] cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese *or* suffers from a weight condition that is the symptom of a physiological disorder.") (emphasis added) (internal citation omitted). The Commission acknowledges that *Watkins* and other decisions have concluded that obesity is not an impairment unless it results from a physiological condition. *See, e.g.*, *Lescoe v. Pa. Dep't of Corr.*, 464 F. App'x 50, 53 (3d Cir. 2012) (unpublished) (noting that some circuits require a showing that obesity results from a physiological disorder, but not definitively deciding whether obesity is a disability under the pre-amendments ADA); *Greenburg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1262-64 (11th Cir. 2007) (explaining, in pre-amendments case, that "[t]he district court observed that . . . some courts have held that obesity must result from a physiological condition in order to be considered a disability," but not reaching the question of whether a physiological basis is required).

However, *Watkins* and its progeny predate the ADAAA, and the district court's reading of EEOC's regulation and interpretive guidance is especially untenable after the amendments. Although the amendments did not alter the

18

regulatory definition of impairment, *see* 29 C.F.R. Pt. 1630, App. § 1630.2(h), they directed that "the definition of disability . . . shall be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A). The district court's narrow understanding of "impairment" conflicts with the ADAAA's mandate that disability should be broadly construed, because to establish disability it is first necessary to establish an impairment. *See* 42 U.S.C. § 12102(1) (defining disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such impairment; or being regarded as having such an impairment").

Under the district court's reading, morbid obesity with no demonstrated physiological basis cannot be an impairment; therefore it cannot be a disability even if it substantially limits a major life activity. As several courts have concluded, this outcome is inconsistent with the ADAAA's broad coverage, underscoring that the district court's requirement of a physiological basis is even less supportable after the amendments. *See BNSF Ry. Co. v. Feit*, 281 P.3d 225, 229, 230-31 (Mont. 2012) (concluding that obesity that is not the symptom of a physiological condition may be a physical or mental impairment under Montana law analogous to ADA; declining to follow pre-amendments case law requiring a physiological basis given the ADAAA's expanded scope); *see also Whittaker v.*

19

*America's Car-Mart, Inc.*, No. 1:13CV108, 2014 WL 1648816, at *2-3 (E.D. Mo. Apr. 24, 2014) (unpublished) (deeming plaintiff's complaint sufficient even though he did not allege that his severe obesity was related to an underlying physiological disorder or condition and explaining that ADAAA substantially expanded ADA); *Lowe v. Am. Eurocopter*, *LLC*, No 1:10CV24-A-D, 2010 WL 5232523, at *7-8 (N.D. Miss. Dec. 16, 2010) (unpublished) (acknowledging pre-amendments case law holding that obesity is not a cognizable ADA impairment, but concluding that "[b]ased on the substantial expansion of the ADA by the ADAAA, [d]efendant's assertion that [p]laintiff's weight cannot be considered a disability is misplaced").[3]

Therefore, EEOC's reading of the regulations and interpretive guidance— that acute obesity is not a "normal" deviation in weight, so a physiological cause is not required—is reasonable and consistent with the ADAAA. And, EEOC's interpretation of its own regulation and interpretive guidance is entitled to deference. *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

---

[3] EEOC's pre-amendments interpretive guidance on the regulatory definition of "substantially limits" stated that "except in rare circumstances, obesity is not considered a disabling impairment." 56 Fed. Reg. 35,726, 35,741 (July 26, 1991). However, the amended version of the interpretive guidance based on the ADAAA omits that language. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j).

Appellate Case: 14-3858    Page: 25    Date Filed: 03/23/2015 Entry ID: 4257449

In this case, Morriss has, at a minimum, raised a genuine issue of fact as to whether his weight at the time BNSF declined to hire him—281 or 285 pounds with a BMI of 40.3 or 40.9—fell outside the "normal" range. BMI is one common measure of obesity, as confirmed by BNSF's own medical personnel and the NIH-NHLBI publications on which BNSF relied in asserting that Class III obesity poses health risks. App. 746-47, 1296, 1473 (Clark Dep. 11:16-12:20; Jarrard Dep. II Ex. 3 at 1; Jarrard Dep. II Ex. 4 at 60). Morriss's BMI over 40 put him in the category of "Class III obesity," also known as "morbid obesity," "extreme obesity," and "clinically severe obesity." App. 746-47, 1296, 1333, 1468, 1473, 1585 (Clark Dep. 11:16-12:20; Jarrard Dep. II Ex. 3 at 1, 38; Jarrard Dep. II Ex. 4 at 55, 60, 171); *The Merck Manual* 59 tbl.5-2 (19th ed. 2011).

Also, morbid obesity is sometimes defined as weight more than double or more than 100 pounds over optimal or normal weight. *Cook v. R.I. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 20 n.1 (1st Cir. 1993) (morbid obesity is twice optimal weight or more than 100 pounds over optimal weight) (citing *The Merck Manual of Diagnosis and Therapy* 950, 953 (Robert Berkow ed., 15th ed. 1987)); *see also EEOC Compliance Manual* § 902.2(c)(5)(ii), 2009 WL 4782107 (Nov. 21, 2009) ("severe obesity, which has been defined as body weight more than 100% over the norm . . . is *clearly* an impairment") (emphasis added) (citing

21

*The Merck Manual of Diagnosis and Therapy* 981 (Robert Berkow ed., 16th ed. 1992) (defining severe obesity as 100% overweight)).[4] Morriss's weight of 281 or 285 pounds was more than 100 pounds greater than the mid-point (153 pounds)—and even the upper limit (174 pounds)—of the weight range for an individual of Morriss's height with normal BMI. App. 1296, 1341 (Jarrard Dep. II Ex. 3 at 1, 46).  Morriss asserted at summary judgment that he also met the 100%-greater-than-normal-weight standard, because his weight fell in the range of being twice the normal weight range for an individual of his height. *See* Morriss Br. 31-32; App. 1762 (Pl.'s Reply Mot. Summ. J. 1). To the extent there is any dispute about whether Morriss's weight falls outside the "'normal' range," he has raised a genuine issue of fact that cannot be resolved at summary judgment.

## C. A jury could conclude that BNSF failed to hire Morriss because of a perceived impairment.

The record also supports a conclusion that BNSF perceived Morriss as having an impairment. BNSF declined to hire Morriss based on its assumption that

---

[4] EEOC's Compliance Manual is a resource for EEOC investigators. Section 902 of the Compliance Manual covers the definition of the term "disability." EEOC has removed Section 902 of the Compliance Manual from its website because ADAAA superseded portions of the Section's analysis. *See* http://www.eeoc.gov/policy/docs/902cm.html (last visited March 23, 2015). However, the Compliance Manual's reasoning remains instructive to the extent that it does not conflict with ADAAA.

Appellate Case: 14-3858     Page: 27     Date Filed: 03/23/2015 Entry ID: 4257449

he was prone to sudden incapacitation in the workplace due to his morbid obesity. Again, under the amended ADA, an individual establishes coverage under the regarded-as prong "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

BNSF's stated reason for disqualifying Morriss was increased risk of developing certain medical conditions, especially sleep apnea, stroke, cardiovascular disease, and diabetes—none of which Morriss had at the time of his application. Specifically, BNSF's justification for its disqualification of Morriss was its belief that Class III obesity is associated with an especially high risk for developing "health conditions that can lead to sudden incapacitation." App. 1156-59 (Jarrard Dep. I 30:21-33:11). BNSF's Chief Medical Officer and expert medical witness testified, "[t]he probability that people with Class III obesity will develop one of these medical conditions is so high it's unacceptable to us to accept that level of risk in these safety-sensitive jobs." App. 1163 (Jarrard Dep. I 37:3-7).

BNSF did employ and hire individuals who actually had underlying medical conditions the company associated with "sudden incapacitation" in safety-sensitive positions. For example, it assessed applicants with diabetes, sleep apnea, or past

23

history of heart attack or stroke on a case-by-case basis. But BNSF did not apply the same case-by-case assessment to Morriss, although BNSF's medical officers acknowledged having no reason to believe that Morriss had diabetes, coronary disease, sleep apnea, or history of stroke. In essence, BNSF treated Morriss as posing a more significant risk of sudden incapacitation than individuals who actually had those underlying conditions—because he supposedly had the potential to develop the conditions.

A jury could therefore conclude that BNSF failed to hire Morriss because of a perceived impairment: morbid obesity linked to a supposedly high risk of sudden incapacitation. In *Cook v. Rhode Island Department of Mental Health, Retardation, and Hospitals*, which also involved a regarded-as claim by an employee with morbid obesity, the court explained that "the jury could have found that [the] plaintiff . . . was treated . . . as if she had a physical impairment" because the employer cited its "fear that her condition augured a heightened risk of heart disease" as justification for failure to hire her. 10 F.3d at 23. According to the First Circuit, the employer's "fear" of "a heightened risk of heart disease" "show[ed] conclusively that [the employer] treated plaintiff's obesity as if it actually affected her . . . cardiovascular system[]." *Id. See also Doe v. N. Y. Univ.,* 666 F.2d 761, 775 (2d Cir. 1981) (university's "refusal to readmit [a student with a psychiatric

24

illness] on the ground that she pose[d] an unacceptable risk . . . [made] clear that she [was] 'regarded as having such an impairment'"). Similarly, in the present case, a jury could find that BNSF's fear that Morriss would experience sudden incapacitation from, for example, a diabetic episode or heart attack showed that BNSF treated Morriss as having an impairment affecting a major bodily system, such as the endocrine or cardiovascular system. *See* 29 C.F.R. § 1630.2(h) (defining impairment). Morriss's situation was no different from a scenario where an employer erroneously believed that an employee had diabetes or sleep apnea and incorrectly feared that the employee would suffer a hypoglycemic episode or loss of consciousness.[5]

---

[5] Moreover, an employer's safety concerns are irrelevant to whether an individual has established "disability" under the ADA. The district court did not reach BNSF's direct threat or business necessity affirmative defenses, but BNSF could not prevail on either defense at summary judgment. The employer bears the burden of establishing the affirmative defense of direct threat. *See EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007). BNSF failed to show it conducted the required "individualized direct threat analysis that relies on the 'best current medical or other objective evidence,'" *id.*, instead relying on its belief that all individuals with Class III obesity pose a threat of sudden incapacitation. BNSF likewise did not establish the business necessity defense, which applies to "qualification standards . . . shown to be job-related and consistent with business necessity." 42 U.S.C. § 12113(a). BNSF may argue that categorically disqualifying individuals with Class III obesity is necessary to preserve workplace safety. But its practice of case-by-case medical qualifications for applicants with BMI under 40

25

## II. The district court incorrectly interpreted EEOC's interpretive guidance stating that "characteristic predisposition to illness or disease" is not an impairment.

The district court also erred in holding that Morriss's morbid obesity could not qualify as an impairment because BNSF viewed his condition as a "characteristic predisposition to illness or disease." The district court emphasized that BNSF assertedly declined to hire Morriss because it believed his morbid obesity carried a risk of future health conditions. Relying again on EEOC's interpretive guidance, the district court determined that Morriss's supposed future health risks were a "characteristic predisposition to illness or disease," and therefore exempted from the definition of impairment. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h).

Regardless of whether BNSF is right about Morriss's health risks, the district court's reading of EEOC's interpretive guidance is incorrect. "Characteristic predisposition to illness or disease" must be interpreted in context, should be construed narrowly to comport with the ADAAA's broad scope, and must be understood in accordance with the proposition that discrimination based

---

or existing diseases that cause sudden incapacitation (and internal transfers for employees with Class III obesity) undermines that contention.

26

on the consequences or attributes of a disability is equivalent to discrimination based on the disability itself.

First, "characteristic predisposition to illness or disease" must be read in context. The "characteristic predisposition" language is found in a section of EEOC's interpretive guidance discussing the meaning of "physical or mental impairment," in a paragraph that describes various characteristics that are not impairments:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder. *The definition, likewise, does not include characteristic predisposition to illness or disease*.

29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). "Characteristic predisposition" should be understood in light of the opening sentence of this paragraph, which refers to "physical, psychological, environmental, cultural, and economic characteristics that are not impairments." *Id.* That is, a "characteristic predisposition to illness or disease" stemming from a characteristic that falls outside the definition of impairment is not itself an impairment under the ADA. *See, e.g.*, *EEOC Compliance Manual* § 902.2(c)(2), 2009 WL 4782107 (Nov. 21,

27

2009) ("A person may be predisposed to developing an illness or a disease because of factors such as environmental, economic, cultural, or social conditions. This predisposition does not amount to an impairment.").

Here, Morriss's supposed risk of developing heart disease, diabetes, or sleep apnea does not stem from environmental, cultural, or economic factors, nor does it stem from a physical or physiological characteristic that is exempted from the definition of impairment. Morriss's alleged risk stems from a health condition that is a cognizable impairment under the ADA, as explained *supra* at 16-21. Obesity is a disease recognized by the American Medical Association, as BNSF's medical expert acknowledged, and morbid obesity is a severe or extreme manifestation of that disease. App. 746-47, 1211, 1296, 1333, 1468, 1473, 1585 (Clark Dep. 11:16-12:20; Jarrard Dep. I 85:3-15; Jarrard Dep. II Ex. 3 at 1, 38; Jarrard Dep. II Ex. 4 at 55, 60, 171). Here, BNSF linked Morriss's supposed risk directly to his obesity, not to any non-impairment factors.

Interpreting "characteristic predisposition" as referring to factors that fall outside the definition of impairment makes more sense than the district court's interpretation, which sweeps in predispositions linked to health conditions. The Commission's reading is consistent with the statute because "characteristic predisposition to illness or disease" must be construed to comport with the ADA

28

amendments' "broad coverage." 42 U.S.C. § 12102(4)(A). The district court's expansive reading would in fact curtail ADA coverage because it would allow employers to escape liability for regarded-as claims, even when explicitly relying on an impairment, by simply asserting that an adverse action was based on fear of future health risks. In the present case, the district court applied the "characteristic predisposition" language only to Morriss's regarded-as claim, but the court's interpretation would be equally problematic if applied to actual disability or record of disability claims.

Additionally, the district court's interpretation of "characteristic predisposition" conflicts with the well-established proposition that the ADA prohibits discrimination based on the consequences or attributes of a disability— just as it prohibits discrimination based on a disability itself. In passing the ADA amendments, Congress specifically reinstated the reasoning of *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987). Pub. L. No. 110-325 § 2(b)(3). *Arline* held that terminating an employee susceptible to tuberculosis out of fear that she was contagious was equivalent to terminating her because of her tuberculosis. 480 U.S. at 284-86; *see also id.* at 285 (explaining that the risk of transmitting disease "did not justify excluding from the coverage of the [ADA] *all* persons with actual or perceived contagious diseases"). Other decisions have likewise

29

emphasized that discrimination based on effects or manifestations of an underlying condition is equivalent to discrimination based on the underlying condition. *See also Deas v. River West, L.P.*, 152 F.3d 471, 477 n. 14 (5th Cir. 1998) (observing that "there is usually no legal distinction between" discrimination "because of a disability" and discrimination "based on the characteristic or defining symptoms of that disability") (citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683 (4th Cir. 1997)); *Martinson*, 104 F.3d at 686 (explaining that it was "immaterial" whether an employer terminated an employee because of his epilepsy or "because of the 'specific attributes'" of his epilepsy, "i.e., his seizures"); *Doe ,* 666 F.2d at 775 (university regarded student as having an impairment where it viewed a student as posing a risk to others based on her psychiatric illness).

The district court's interpretation of "characteristic predisposition" conflicts with the proposition articulated in *Arline*. In this case, as explained *supra* at 16-21, Morriss has an impairment cognizable under the ADA—morbid obesity. Morriss's supposed risk of developing certain diseases is a consequence of that impairment; therefore, under *Arline*, discriminating against Morriss based on his risk of future health conditions is equivalent to discriminating against him based on his morbid obesity. Indeed, under the district court's interpretation, the employee in *Arline*, who was susceptible to a relapse of tuberculosis, would arguably have a

30

"characteristic predisposition to illness or disease" and therefore could not

establish an ADA impairment. This underscores that the district court's expansive

interpretation of "characteristic predisposition" conflicts with the statute's broad

coverage and would restrict the rights of individuals with disabilities to a degree

far exceeding Congress's intent.

## CONCLUSION

For the reasons discussed above, the Commission respectfully urges this

Court to reverse the district court's grant of summary judgment.

Respectfully submitted,

| | |
|---|---|
| P. DAVID LOPEZ | s/ Anne W. King |
| General Counsel | ANNE W. KING |
| | Attorney |
| CAROLYN L. WHEELER | U.S. EQUAL EMPLOYMENT |
| Acting Associate General Counsel | OPPORTUNITY COMMISSION |
| | Office of General Counsel |
| LORRAINE C. DAVIS | 131 M St. NE, Fifth Floor |
| Assistant General Counsel | Washington, DC 20507 |
| | (202) 663-4699 |
| | anne.king@eeoc.gov |

31

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d), because this brief contains 6,759 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface—14-point Times New Roman font in the body and footnotes of the brief using Microsoft Word 2007.

This brief complies with 8th Cir. R. 28A(h) because it has been scanned for viruses, the brief is virus free, and the electronic version of the brief was generating by printing to Portable Document Format from the original word processing file so that the text of the electronic version may be searched and copied.

s/ Anne W. King
Attorney for the Equal Employment
Opportunity Commission

Dated: March 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eighth

Circuit by using the CM/ECF system. Participants in the case who are registered

CM/ECF users will be served by the CM/ECF system.


<div style="margin-left:50%">

s/ Anne W. King
ANNE W. KING
Attorney for the Equal Employment
Opportunity Commission


U.S. EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. NE, Fifth Floor
Washington, DC 20507
(202) 663-4699
anne.king@eeoc.gov

</div>