No. 14-3858
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

MELVIN A. MORRISS III,

Plaintiff-Appellant,

v.

BNSF RAILWAY COMPANY,

Defendant-Appellee.
_____

On Appeal from the United States District Court
for the District of Nebraska
_____

BRIEF OF AMICUS CURIAE AARP
IN SUPPORT OF APPELLANT, MELVIN A. MORRISS III
_____

DANIEL B. KOHRMAN*
DARA S. SMITH
AARP Foundation Litigation
601 E St. NW
Washington, DC 20049
202-434-2064
dkohrman@aarp.org
Attorneys for *Amicus Curiae*

*Counsel of Record

# CORPORATE DISCLOSURE STATEMENT

The Internal Revenue Service has determined that AARP is organized and operated exclusively for the promotion of social welfare pursuant to Section 501(c)(4) (1993) of the Internal Revenue Code and is exempt from income tax. AARP is also organized and operated as a non-profit corporation pursuant to Title 29 of Chapter 6 of the District of Columbia Code 1951.

Other legal entities related to AARP include AARP Foundation, AARP Services, Inc., Legal Counsel for the Elderly, and AARP Insurance Plan, also known as the AARP Health Trust.

AARP has no parent corporation, nor has it issued shares or securities.

Appellate Case: 14-3858    Page: 2    Date Filed: 04/08/2015 Entry ID: 4262942

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT............................................................i

TABLE OF AUTHORITIES........................................................................iii

STATEMENT OF INTEREST OF AMICUS CURIAE AARP..............................1

INTRODUCTION....................................................................................2

SUMMARY OF ARGUMENT....................................................................3

ARGUMENT..........................................................................................5

I. Morriss' "Class III" Obesity is an Impairment Under the ADA Because It Affects His Body Systems Even Though He Does Not Yet Show Symptoms of Other Medical Conditions Caused by Obesity ...................5

II. Morriss' Class III Obesity is a "Perceived Impairment" Under the ADA Because BNSF Believed He Had a Current Condition That Would Lead to Other Serious Health Problems ................................12

    A.    BNSF's own argument proves that the company was aware of Morriss' obesity and perceived his obesity to be an impairment ........................................................................13

    B.    The ruling below that the harm inflicted on Morriss is not covered by the ADA frustrates the central purpose of the "regarded-as" prong of the ADA ........................................17

CONCLUSION.....................................................................................20

CERTIFICATE OF COMPLIANCE ........................................................21

CERTIFICATE OF SERVICE AND FILING .............................................22

Appellate Case: 14-3858    Page: 3    Date Filed: 04/08/2015 Entry ID: 4262942

# TABLE OF AUTHORITIES

## Cases

*Gasser v. District of Columbia*, 442 F.3d 758, 763 (D.C. Cir. 2006) .......................... 17

*Morriss v. BNSF Ry. Co.*, No. 8:13CV24, 2014 U.S. Dist. LEXIS 163773
(D. Neb. Nov. 20, 2014).................................................................................. 3, 11

*Powell v. Gentiva Health Servs., Inc*, No. 12-0007-WS-C, 2014 U.S. Dist.
LEXIS 17709 (S.D. Ala. Feb. 12, 2014)........................................................ 15, 16

*Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763
(8th Cir. 2004)................................................................................................... 19

*Sch. Bd. of Nassau Cnty v. Arline*, 480 U.S. 273 (1987)............................................ 17

*Sibilla v. Follett Corp.*, No. CV 10-1457 (AKT), 2012 U.S. Dist. LEXIS
46255 (E.D.NY Mar. 30, 2012) ................................................................... 15, 16

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) ................................................ 17

*Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)................................... 19

## Statutes, Rules and Regulations

ADA Amendments Act of 2008 (ADAAA),
Pub. L. No. 110-325 (Sept. 25, 2008) ................................................................... 1

Americans with Disabilities Act ("ADA")
42 U.S.C. §§ 12101-213 ........................................................................................ 1
42 U.S.C. §§ 12101(b)(4)...................................................................................... 13
42 U.S.C. § 12102(1)(C) ......................................................................................... 5
42 U.S.C. § 12102(3) ............................................................................................ 11
42 U.S.C. § 12102(3)(A) ..........................................................................5, 12, 13
42 U.S.C. § 12102(4)(A) ....................................................................................... 13
42 U.S.C. § 12102(4)(D)....................................................................................... 12

Appellate Case: 14-3858    Page: 4    Date Filed: 04/08/2015 Entry ID: 4262942

29 C.F.R. § 1230.2(h)(1) ............................................................ 8, 9, 10, 11

29 C.F.R. § 1630.2(g) .................................................................... 14

29 C.F.R. § 1630.2(h)(1) .......................................................... *passim*

29 C.F.R. pt. 1630 app. § 1630.2(h) ............................................ 18

29 C.F.R. pt. 1630 app. § 1630.2(j)(l)(iv) .................................... 19

29 C.F.R. pt. 1630 app. § 1630.2(l) .............................................. 18

29 C.F.R. pt. 1630 app. § 1630.2(r) .............................................. 19

## Legislative History

154 Cong. Rec. S8842 (daily ed. Sept. 16, 2008) ........................ 18

H.R. Rep. No. 110-730 .................................................................. 18

## Miscellaneous

American Medical Association House of Delegates, *Resolution 420: Recognition of Obesity as a Disease* (2013), http://goo.gl/1aAxOu ........................ 7

American Obesity Treatment Association, *Obesity Basics*, http://goo.gl/9OkM1W ............................................................................ 5

Joshua A. Bell et al., *The Natural Course of Healthy Obesity Over 20 Years*, 65 J. Am. C. Cardiologists 101 (2015) ............................................ 11

Def's Br. in Supp. of Summ. J ........................................................ *passim*

Robert H. Eckel, *Obesity and Heart Disease: A Statement for Healthcare Professionals from the Nutrition Committee, American Heart Association* 96 Circulation 3248 (1997), http://goo.gl/j5TSgT ........................ 6, 10

Kelly Fitzgerald, *Obesity Is Now a Disease, American Medical Association Decides*, Med. News Today, Aug. 17, 2013, http://goo.gl/9r84XN .................... 7

Arin K. Greene et al., Letter to the Editor, *Lower Extremity Lymphedema and Elevated Body-Mass Index*, 366 N. Eng. J. Med. 2136 (2012), http://goo.gl/zWbH2v ................................................................ 8

iv

Barbara K. Hecht and Frederick Hecht, *Why Does Obesity Cause Diabetes?*, MedicineNet.com (2004), http://goo.gl/I2VFVh ...............................8

Bill Hendrick, *Obesity Increases Risk of Deadly Heart Attacks, Study Suggests Obesity-Heart Attack Link Is Independent of Other Risk Factors Such as Diabetes*, WebMD Health News, Feb. 14, 2011, http://goo.gl/jJaGUi........................................................................................9

Johns Hopkins Arthritis Ctr., *Role of Body Weight in Osteoarthritis* (Mar. 27, 2012), http://goo.gl/qiBqER .........................................................8

Mitchell A. Lazar et al., *How Obesity Causes Diabetes: Not a Tall Tale*, 307 SCIENCE 373 (2005) ................................................................8

Peter W. Lementowski & Stephen B. Zelicof, *Obesity and Osteoarthritis*, 37 Am. J. Orthopedics 148 (2008), http://goo.gl/GmvKZS...............................8

Denise Mann, *Obesity May Raise Odds for Painful Leg Condition*, HealthDay, May 30, 2012, http://goo.gl/4bqiHy .................................8

Mayo Clinic, *Obesity: Symptoms* (May 13, 2014), http://goo.gl/3RSDH5................5

Jeffrey I. Mechanick et al., *American Association of Clinical Endocrinologists' Position Statement on Obesity and Obesity Medicine*, 18 Endocrine Pract. 642 (2012), http://goo.gl/GTRraI.......................................6, 8

Paul Poirier et al., *Obesity and Cardiovascular Disease: Pathophysiology, Evaluation, and Effect of Weight Loss: An Update of the 1997 American Heart Association Scientific Statement on Obesity and Heart Disease from the Obesity Committee of the Council on Nutrition, Physical Activity, and Metabolism*, 113 Circulation 898 (2006), http://goo.gl/ER4PyK..................9, 10

Jennifer L. Pomeranz & Rebecca M. Puhl, *New Developments in the Law for Obesity Discrimination Protection*, 21 Obesity 469 (2013), http://ow.ly/JSVV8 .........................................................................2

Appellate Case: 14-3858     Page: 6     Date Filed: 04/08/2015 Entry ID: 4262942

Rebecca M. Puhl & Chelsea A. Heuer, *Obesity Stigma: Important Considerations for Public Health*, 100 Am. J. of Pub. Health 1019 (2010), http://ow.ly/JSUar ................................................................... 2

F. Xavier Pi-Sunyer, et al., Nat'l Insts. of Health, *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* 55 (1998), http://ow.ly/JVOVK ........................................... 5

Appellate Case: 14-3858     Page: 7     Date Filed: 04/08/2015 Entry ID: 4262942

## STATEMENT OF INTEREST OF AMICUS CURIAE AARP

AARP is a nonprofit, nonpartisan organization with a membership that helps people turn their goals and dreams into real possibilities, strengthens communities, and fights for the issues that matter most to families, such as healthcare, employment and income security, retirement planning, affordable utilities and protection from financial abuse. AARP is dedicated to addressing the needs and interests of older workers and strives through legal and legislative advocacy to preserve the means to enforce their rights. Approximately one-third of AARP's members are employed full-time or part-time, and still others are seeking employment. A disproportionate number of older workers have one or more actual "disabilities" and/or a record thereof – and/or may be regarded as having a disability, and are therefore protected by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213 (2012). Addressing obesity as an impairment under the ADA is particularly relevant to AARP's membership, as adults age 45-65 throughout the United States experience disproportionate rates of obesity, the health condition at issue in this case.

AARP is committed to the ADA's vigorous enforcement, including provisions of the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325 (Sept. 25, 2008), and regulations authorized by the ADAAA and issued by the Equal

1

Employment Opportunity Commission (EEOC).  AARP believes the district court misconstrued the ADA as amended, contravening the Act's directive to interpret "disability" as broadly as possible and misunderstanding the amended definition of "regarded as having a disability."

## INTRODUCTION

Discrimination against people with obesity is "both a social justice issue and a priority for public health."  Rebecca M. Puhl & Chelsea A. Heuer, *Obesity Stigma: Important Considerations for Public Health*, 100 Am. J. of Pub. Health 1019, 1019 (2010), http://ow.ly/JSUar.   Individuals with obesity are pervasively stereotyped as being "lazy, weak-willed, unsuccessful, unintelligent, lack[ing] self-discipline, hav[ing] poor willpower, and [being] noncompliant with weight-loss treatment," and these stereotypes are consistently accepted as socially appropriate, common sense truths. *Id.*  Indeed, because individuals with obesity are blamed for their weight, the prevailing societal view is that stigmatizing and discriminating against those with obesity is not only justifiable, but useful and motivational.  *Id.*

These stereotypes about obesity are particularly well-documented in the employment setting, where employees with obesity experience "unfair hiring practices, prejudice from employers, lower wages, harsher discipline, and wrongful termination compared with thinner employees."  Jennifer L. Pomeranz & Rebecca

2

M. Puhl, *New Developments in the Law for Obesity Discrimination Protection*, 21 Obesity 469, 469 (2013), http://ow.ly/JSVV8. Melvin Morriss experienced this kind of unfair treatment when BNSF Railway Co. ("BNSF") revoked its offer of employment solely because his body mass index ("BMI") exceeded 40 – a BMI that BNSF policy categorizes as "Class III obesity." *See Morriss v. BNSF Ry. Co.*, No. 8:13CV24, 2014 U.S. Dist. LEXIS 163773, at *1 (D. Neb. Nov. 20, 2014). Believing that his obesity made Morriss a "health and safety risk[]" because he might one day suffer a sudden incapacitating stroke or heart attack – despite his current ability to safely perform the functions of the position for which he applied (machinist) – BNSF refused to hire him. *Id.*

## SUMMARY OF THE ARGUMENT

The district court's conclusion that BNSF did not regard Morriss as disabled is illogical, inaccurate, and contrary to the text of the ADA as amended in 2008. All the statute requires to show a "regarded as" disability is an actual or perceived impairment. The court's holding that Morriss' "Class III" obesity is not an actual ADA impairment is factually implausible given modern medical science's understanding of obesity. Obesity of such severity falls squarely within the definition of an impairment: it is a "physiological disorder or condition . . . affecting one or more body systems . . . ." *See* 29 C.F.R. § 1630.2(h)(1) (2012). Indeed, an

3

emerging consensus in the medical community is that obesity is a "disease" or a "disorder"– that is, obesity is, at the very least, a current "condition" affecting multiple body systems. It is well-established that obesity causes physical damage and changes, which may not produce current symptoms, but which are likely over time to lead to serious health conditions, including diabetes, heart disease, high blood pressure, and sleep apnea. The district court ignored the medical consensus that "Class III" obesity affects multiple "body systems" and thus qualifies as an actual ADA "impairment" as defined in the regulations. *See id.*

Moreover, whether or not "Class III" obesity constitutes an actual ADA impairment, BNSF's own justification for revoking its offer of employment to Morriss demonstrates that the company *perceived* his "Class III" obesity to be an impairment. BNSF asserted that Morriss' obesity posed a health and safety risk because it could suddenly cause a heart attack or stroke. This establishes the company's belief that Morriss' "Class III" obesity was an impairment – *i.e.*, that it was currently affecting his body in a way that would later result in serious health problems. Congress included the "regarded as" prong in part to prevent employers from denying work opportunities to people whom the employers believe to be so impaired that they may become dangerous at a later date, despite their ability to perform their jobs safely at present. Denying coverage to people like Morriss, whom

4

employers fear will be incapacitated later based on a current physical condition, undercuts the basic purpose of the ADA as amended.

## ARGUMENT

**I.      Morriss' "Class III" Obesity is an Impairment Under the ADA Because It Affects His Body Systems Even Though He Does Not Yet Show Symptoms of Other Medical Conditions Caused by Obesity.**

Under the ADA, to prove that he or she was "regarded as having [a disability]," 42 U.S.C. § 12102(1)(C), a plaintiff need only show that the employer took an adverse action because of an "an actual or perceived physical or mental *impairment* whether or not the impairment limits or is perceived to limit a major life activity" *Id.* at § 12102(3)(A) (emphasis added). EEOC regulations define an impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2012). "Severe" obesity[1]

---

[1] Although thresholds for "severe" obesity based on BMI vary slightly, there is a consensus that a BMI above 40 indicates severe, extreme, or "morbid" obesity. *See, e.g.*, F. Xavier Pi-Sunyer, et al., Nat'l Insts. of Health, *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* 55 (1998), http://ow.ly/JVOVK; Mayo Clinic, *Obesity: Symptoms* (May 13, 2014), http://goo.gl/3RSDH5; American Obesity Treatment Association, *Obesity Basics*, http://goo.gl/9OkM1W (last visited Mar. 19, 2015).

Appellate Case: 14-3858      Page: 12      Date Filed: 04/08/2015 Entry ID: 4262942

like Morriss' is an impairment within the EEOC's definition, and the district court's contrary conclusion cannot be squared with current medical knowledge.

The emerging consensus in the medical community is that obesity is not a mere physical descriptor associated with various other medical problems, but rather, it is itself a disease or disorder with definable effects on the body. The American Heart Association has called obesity "an increasingly prevalent metabolic disorder." Robert H. Eckel, *Obesity and Heart Disease: A Statement for Healthcare Professionals from the Nutrition Committee, American Heart Association* 96 Circulation 3248, 3248 (1997)[hereinafter "Obesity and Heart Disease"], http://goo.gl/j5TSgT. The American Association of Clinical Endocrinologists ("AACE") takes the position that obesity is a disease because it fits the criteria for a disease: "1. *An impairment of the normal functioning of some aspect of the body*; 2. Characteristic signs or symptoms; and 3. Harm or morbidity." Jeffrey I. Mechanick et al., *American Association of Clinical Endocrinologists' Position Statement on Obesity and Obesity Medicine*, 18 Endocrine Pract. 642, 644 (2012) [hereinafter "AACE Position Statement"] (emphasis added), http://goo.gl/GTRraI.

Likewise, the American Medical Association has adopted a resolution classifying obesity as a disease because "[t]he suggestion that obesity is not a disease but rather a consequence of a chosen lifestyle exemplified by overeating and/or

6

inactivity is equivalent to suggesting that lung cancer is not a disease because it was brought about by individual choice to smoke cigarettes." Kelly Fitzgerald, *Obesity Is Now a Disease, American Medical Association Decides*, Med. News Today, Aug. 17, 2013, http://goo.gl/9r84XN (also noting that "[i]n 2004, Medicare took away wording from its coverage manual that previously said obesity was not a disease, and the Internal Revenue Service has said obesity treatments can count for tax deductions."). Supporters of the AMA resolution included AACE as well as the American College of Cardiology, The Endocrine Society, American Society for Reproductive Medicine, The Society for Cardiovascular Angiography and Interventions, the American Urological Association, and the American College of Surgeons. American Medical Association House of Delegates, *Resolution 420: Recognition of Obesity as a Disease* (2013), http://goo.gl/1aAxOu. The conclusion that obesity is a disease or disorder, rather than a symptom or mere physical description, is inescapable given the well-established medical evidence of obesity's harmful effects on "body systems" identified in the regulatory definition of an ADA "impairment." *See* 29 C.F.R. § 1630.2(h)(1).

Specifically, obesity has a number of harmful effects on body systems identified in the regulatory definition of "impairment." *See id.* The mass inherently associated with increased body fat affects the "musculoskeletal" system, *id.*, placing

7

increased stress on the joints – in particular, the weight born by the knees – which causes cartilage degradation and leads to osteoarthritis.  Peter W. Lementowski & Stephen B. Zelicof, *Obesity and Osteoarthritis*, 37 Am. J. Orthopedics 148,148-51 (2008), http://goo.gl/GmvKZS; Johns Hopkins Arthritis Ctr., *Role of Body Weight in Osteoarthritis* (Mar. 27, 2012), http://goo.gl/qiBqER.  Obesity affects the "lymphatic" system, 29 C.F.R. § 1230.2(h)(1), in severely obese individuals; studies suggest that increased adipose tissue impairs the flow of lymphatic fluid by compressing and damaging lymphatic vessels and thus leading to lymphedema.  Arin K. Greene et al., Letter to the Editor, *Lower Extremity Lymphedema and Elevated Body Mass Index*, 366 N. ENG. J. MED. 2136, 2136-37  (2012), http://goo.gl/zWbH2v; Denise Mann, *Obesity May Raise Odds for Painful Leg Condition*, HealthDay, May 30, 2012, http://goo.gl/4bqiHy.

Obesity also affects the "endocrine" system, 29 C.F.R. § 1230.2(h)(1), because adipose tissue (which stores fat) secretes hormones that regulate the metabolism, contributing to insulin resistance and ultimately diabetes.  Mitchell A. Lazar et al.,: *Not a Tall Tale*, 307 SCIENCE 373, 374 (2005) [hereinafter "How Obesity Causes Diabetes"], http://goo.gl/1GGctw; *see also* AACE Position Statement at 645; Barbara K. Hecht and Frederick Hecht, *Why Does Obesity Cause Diabetes?*, MedicineNet.com (2004), http://goo.gl/I2VFVh.  And, as is well known, obesity's

8

effects on the "circulatory" and "cardiovascular" systems, 29 C.F.R. § 1230.2(h)(1), are legion. In addition to indirectly causing heart disease by increasing the likelihood of other diseases like hypertension and insulin resistance, increased adipose tissue has a direct impact on heart structure and function because it releases proteins that cause heart inflammation, increases total blood volume and thereby enlarges portions of the heart, and deposits fat directly onto the heart, causing it increased strain. Paul Poirier et al., *Obesity and Cardiovascular Disease: Pathophysiology, Evaluation, and Effect of Weight Loss: An Update of the 1997 American Heart Association Scientific Statement on Obesity and Heart Disease from the Obesity Committee of the Council on Nutrition, Physical Activity, and Metabolism*, 113 Circulation 898, 900-901 (2006) [hereinafter "Obesity and Cardiovascular Disease"], http://goo.gl/ER4PyK; *see* Bill Hendrick, *Obesity Increases Risk of Deadly Heart Attacks, Study Suggests Obesity-Heart Attack Link Is Independent of Other Risk Factors Such as Diabetes*, WebMD Health News, Feb. 14, 2011, http://goo.gl/jJaGUi. These processes gradually and cumulatively lead to numerous cardiopulmonary conditions, including strokes, coronary artery disease, cardiomegaly (enlarged heart), congestive heart failure, and many others. Obesity and Cardiovascular Disease, *supra*, at 905-08; Obesity and Heart Disease, *supra*, at 3248-50.

9

Extensive documentation of these physical processes refutes the outdated notion that there are merely correlations between obesity and an increased risk of various other physical problems. Rather, studies repeatedly demonstrate that obesity itself inherently involves physical and chemical processes that affect the operation of obese individuals' bodily systems. *See*, *e.g.*, Obesity and Heart Disease, *supra*, at 849 ("Until recently the relation between obesity and coronary heart disease was viewed as indirect, *i.e.*, through covariates related to both obesity and coronary heart disease risk . . . Long-term longitudinal studies, however, indicate that obesity as such not only relates to but independently predicts coronary atherosclerosis."); Obesity and Cardiovascular Disease, *supra*, at 905 ("[O]besity is listed as a potential modifiable risk factor for stroke, but the independence of this relationship from cholesterol, hypertension, and diabetes was only recently identified.").

Additionally, even a severely obese individual – like Morriss – who has not yet developed clinically detectable symptoms of these related health problems is nonetheless impaired within the regulatory definition, because obesity's effects are already occurring. *See* 29 C.F.R. § 1630.2(h)(1) (impairment is a condition "affecting one or more body systems"). In short, obesity affects body systems, even causing significant dysfunction, long before related diseases are clinically diagnosed. Obesity and Cardiovascular Disease, *supra*, at 905 ("[O]besity in adolescents and

10

young adults accelerates the progression of atherosclerosis decades before the

appearance of clinical manifestations.")   One study showed that in a group of

individuals with "healthy" obesity – *i.e.*, those who currently showed no signs of

abnormal metabolic function – only ten percent remained "healthy" after 20 years,

with the percentage decreasing steadily every five years until that time.  Joshua A.

Bell et al., *The Natural Course of Healthy Obesity Over 20 Years*, 65 J. Am. C.

Cardiologists 101, 101-02 (2015).

Obesity is an impairment because it constantly affects body systems

incrementally, ultimately resulting in other, related clinically diagnosable conditions.

Consequently, the district court erred by suggesting that when an individual has not

yet progressed far enough along this continuum for such diseases and other effects

to be diagnosable, that individual is not currently being affected at all, and thus is

not impaired.  *See Morriss v. BNSF Ry. Co.*, No. 8:13CV24 2014 U.S. Dist. LEXIS

163773, at *8 (D. Neb. Nov. 20, 2014).[2]  Indeed, the ADAAA contemplated this

---

[2] Furthermore, the district court erred in equating Morriss' acknowledged lack of limitations on "major life activities" due to his obesity with the absence of any effects on any of Morriss' body systems due to his obesity.  *Morris*, 2014 U.S. Dist. LEXIS 163773.  This is problematic because "actual or perceived" "limits" in a "major life activity" are irrelevant to establishing a "regarded as" disability, 42 U.S.C. § 12102(3), while any "disorder or condition," such as serious obesity, "affecting  one or more body systems," is sufficient to establish an "impairment,"  29 C.F.R. § 1630.2(h)(1), and thereby, to establish a regarded as disability.

11

circumstance by ensuring that the statutory definition of "disability" includes conditions that are "episodic or in remission," whose effects, like those of Morriss' obesity, may not be currently detectable, but would be sufficient to satisfy the definition "when active." 42 U.S.C. § 12102 (4)(D).

In short, the district court's conclusion that Morriss' severe obesity was not an impairment ignores modern medical science's understanding of obesity's pervasive harmful bodily effects and misconstrues the letter and purpose of the regulatory definition of "impairment."

## II. Morriss' Class III Obesity is a "Perceived Impairment" Under the ADA Because BNSF Believed He Had a Current Condition That Would Lead to Other Serious Health Problems.

Even if the Court does not conclude, as it should, that "Class III" obesity constitutes an actual impairment within the statutory definition, Morriss is not precluded from coverage under the ADA. Since Congress amended the ADA in 2008, protection under the Act's "regarded as" prong extends to all persons who have been subjected to adverse employment action "because of an actual *or perceived* physical or mental impairment." *Id.* § 12102(3)(A) (emphasis added). Morriss is entitled to protection under the "regarded-as" prong because BNSF (1) perceived Morriss to be obese and (2) perceived his obesity to be an impairment. The district

12

court's ruling that BNSF did not regard Morriss as disabled undercuts the basic purpose of the "regarded as" prong.

A.   **BNSF's own argument proves that the company was aware of Morriss' obesity and perceived his obesity to be an impairment.**

As discussed above, *see supra at* Part I, EEOC regulations define "physical impairment" as, "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . cardiovascular, . . . circulatory, . . . and endocrine." 29 C.F.R. § 1630.2(h)(1). Therefore, if BNSF believed at the time that they chose not to hire Morriss that his obesity was affecting one or more of his body systems then, by definition, BNSF perceived Morriss to have an impairment and thus "regarded [him] as having" a disability. *See* 42 U.S.C. § 12102(3)(A).

The ADA is animated by a congressional will "to invoke the sweep of congressional authority . . . in order to address the major areas of discrimination faced day-to-day by persons with disabilities." *Id.* § 12101(b)(4) (2012). The ADAAA of 2008 evinced Congress' desire to extend this protection as widely as possible, as evidenced by its inclusion of an explicit instruction to courts interpreting the statute that, "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted." *Id.* § 12102(4)(A). Since "impairment" is included in the definition of disability, this congressionally mandated rule of broad interpretation extends to it

13

as well. *See* 29 C.F.R. § 1630.2(g) (2012). In the instant matter there is sufficient evidence presented in BNSF's own Brief in Support of Summary Judgment to require reversal of the district court's conclusion that no jury could find that BNSF perceived Morriss' obesity to be an impairment within the regulatory definition.

In its Statement of Facts, BNSF acknowledges that it refused to hire Morriss because of "health and safety risks associated with Class [III] obesity." Def's Br. in Supp. of Summ. J. 5-6 ¶ 16 [hereinafter "BNSF Brief"]. BNSF further elaborates upon the health problems it associated with obesity, stating that "[s]ignificant health risks that can lead to sudden incapacitation for someone with Class III obesity include heart disease, stroke, heart attack, diabetes, and sleep apnea." *Id.* at 11, ¶ 39. These statements alone are sufficient evidence that BNSF considered Morriss' obesity to be an impairment as it is defined by the EEOC regulations, despite BNSF's protestations to the contrary. *See id.* at 28.

BNSF has adopted the paradoxical position that Morriss is at a high risk of developing a laundry list of serious medical problems by virtue of his obesity, but that nonetheless, the company did not "perceive that [Morriss'] obesity presently affected any of his body systems." *Id.* This position cannot withstand the scrutiny of basic logic. If, as BNSF acknowledges, obesity is likely to lead to the development of medical problems such as stroke, heart attack, and diabetes which, as discussed

14

above (*see supra at* Part I), are each themselves failures of the circulatory, cardiovascular, and endocrine systems respectively, then BNSF must recognize that obesity itself presently affects those systems in some way. To argue the contrary, as BNSF does, is to suggest that obesity can somehow cause one's circulatory, cardiovascular, or endocrine systems to fail without ever itself "affect[ing]"those systems in a negative way. Such an argument is absurd on its face. BNSF's own statements acknowledge that its employees knew Morriss was obese, perceived there to be a link between obesity and disorders that constitute critical failures of various body systems, and took adverse employment action against Morriss in the form of failing to hire him based upon this knowledge. By its own admission, BNSF feared that Morriss' obesity would cause one of his body systems to fail in a way that could incapacitate him at an inopportune moment while in the workplace, and it concededly denied him employment based on this fear. BNSF Brief, *supra*, at 38-39. This is the very spirit and definition of "regarded-as" discrimination under the ADAAA. *See infra* Part II.B.

Furthermore, the cases on which BNSF relies are inapt. Particularly, BNSF's reliance upon *Powell v. Gentiva Health Servs., Inc*, No. 12-0007-WS-C, 2014 U.S. Dist. LEXIS 17709 (S.D. Ala. Feb. 12, 2014), and *Sibilla v. Follett Corp.*, No. CV 10-1457 (AKT), 2012 U.S. Dist. LEXIS 46255 (E.D.NY Mar. 30, 2012), is misplaced,

15

as both of those cases are factually distinguishable from the instant matter. In both *Powell* and *Sibilla*, plaintiffs failed to prevail on "regarded-as" claims because the district courts held that the evidence in the record was insufficient to support those claims. In *Powell*, the plaintiff only adduced a single comment by a supervisor that "she wasn't even going to discuss the weight issue at this time." *Powell*, 2014 U.S. Dist. LEXIS 17709 at *8. The court found this insufficient to support an inference that the defendant employer perceived the plaintiff's obesity as an impairment. *Id.* at 25-32. Similarly, in *Sibilla,* the court granted summary judgment to the defendant employer due to lack of evidence, stating that "even if plaintiffs could prove that Follett regarded them as obese or overweight, it does not necessarily follow that Follett regarded them as having an impairment." *Sibilla*, U.S. Dist. LEXIS 46255 at *25. The *Sibilla* court noted the absence of evidence in the record that the defendant employer was concerned with the health-related effects of the plaintiff's obesity rather than merely the plaintiff's appearance. *See id* at *19. The instant case does not suffer the same dearth of evidence. As described above, the record amply reflects: that BNSF knew that Plaintiff had a BMI over 40 and thus was severely obese; that BNSF believed that obesity is linked to a greater risk of serious medical problems; and that BNSF was motivated by this heightened risk of health problems in making the decision not to hire *Morriss*. *See* BNSF Brief, *supra*,

16

at 5-6 ¶ 12, 8 ¶ 27, 11 ¶ 39.  As such, the holdings in *Powell* and *Sibilla*, despite being post ADAAA cases, are as immaterial to the instant matter as those cases cited by BNSF which pre-date the 2008 amendments.

B. **The ruling below that the harm inflicted on Morriss is not covered by the ADA frustrates the central purpose of the "regarded-as" prong of the ADA.**

The Supreme Court has found that by including within the ADA's coverage "those who are regarded as impaired . . . Congress acknowledged that society's accumulated . . . *fears about disability and disease* are as handicapping as are the physical limitations that flow from actual impairment." *Sch. Bd. of Nassau Cnty v. Arline*, 480 U.S. 273, 284 (1987) (emphasis added).  Accordingly, a "purpose of 'regarded as' claims is to protect employees from . . . assumptions not truly indicative of . . . individual ability." *Gasser v. District of Columbia*, 442 F.3d 758, 763 (D.C. Cir. 2006) (quoting  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, (1999)). It was just these fears and assumptions that operated to Morriss' detriment in this case.

By its own admission, BNSF refused to hire Morriss because it feared that, due to obesity's assumed effects on his body, Morriss would experience a catastrophic health event at an inopportune moment in the work place. BNSF Brief, *supra*, at 5-6 ¶ 16. The authority primarily relied upon by BNSF and the district court to justify this hiring practice, at odds with a generation of precedent, was

17

EEOC's guidance that an ADA impairment may not consist of a "characteristic predisposition to illness or disease." *Id.* at p. 17 (citing 29 C.F.R. pt. 1630 app. § 1630.2(h)).

Nothing in the EEOC Guidance reflects an intent to override longstanding ADA principles condemning employment actions based on "unfounded concerns, mistaken beliefs, fears, myths or prejudice about disabilities." ." 29 C.F.R. pt. 1630 app. § 1630.2(l) (2012) (discussing the "regarded as" prong of the definition of "disability" and citing 154 Cong. Rec. S8842-44 (daily ed. Sept. 16, 2008) (statement of Managers) and H.R. Rep. No. 110-730, at 17). On the contrary, the Guidance specifically recounts Congress' "extensive[]" reliance on *Arline* in enacting the ADA, relates "[t]he ADAAA's . . . reliance on the broad views enunciated in that decision," and reaffirms Congress' "belie[f][in enacting the ADAAA] that courts should continue to rely on [Arline]" for the proposition "that the negative reactions of others are just as disabling as the actual impact of an impairment." *Id.* (quoting 154 Cong. Rec. S8842 (daily ed. Sept. 16, 2008) (statement of Managers)).

The reference to "predisposition" in the Guidance cannot shoulder the huge burden that BNSF and the district court assign to it. It cannot plausibly render superfluous the lengthier and more detailed insistence in the Guidance that disability bias based on speculation is forbidden. Nor does it suffice to vitiate the

18

longstanding focus, in assessing bias based on "disability" under the ADA, on "the necessity of making this determination on an individual basis."  29 C.F.R.  pt. 1630 app. § 1630.2(j)(1)(iv) (2012);  accord *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 769 (8th Cir. 2004) (noting, in examining "asserted impairments," that courts should remember that "Congress intended the existence of a disability to be determined in [] a case-by-case manner.") (citing passage in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) not superseded by the ADAAA).

This is especially so where, as here, an employer claims that an applicant (or employee) poses a danger "to the health or safety of himself or others."  29 C.F.R. pt. 1630, app. § 1630.2(r) ("Direct Threat").  That is, "[d]etermining whether an individual poses a significant risk of substantial harm" – *i.e.*, an asserted risk founded on more than mere speculation or simplistic extrapolation from group characteristics – "must be made on a case by case basis."  *Id.*  Yet the district court hastily credited, without individualized assessment or significant scrutiny of any supporting evidence, a truly sweeping contention by BNSF, with potential adverse future impact on many persons with disabilities, that evades the concrete and demanding proof requirements of the "direct threat" affirmative defense.  *See id.* The court's ruling allows BNSF to reject all applicants with a BMI over 40 on the

19

grounds that they pose a risk of harm at work, even if BNSF does not identify the precise nature and extent of this supposed risk – and further, even if BNSF acknowledges that it did not expect to face harm any time soon, but only over time, after alleged risks have had a chance to build and accumulate. Indeed, the remoteness of the harm at issue in this case perversely weighed in BNSF's favor because the district court used the absence of any current symptoms as a reason to deny Morriss coverage under the ADA.

The district court's reading of the Guidance clashes with the ADA's text, purposes, regulations and the Guidance itself. It must be rejected.

## CONCLUSION

For the reasons set forth above, the Court should reverse the district court's decision.

Respectfully submitted,

/s/ Daniel B. Kohrman
DANIEL B. KOHRMAN*
DARA S. SMITH
AARP FOUNDATION LITIGATION

601 E Street, NW
Washington, DC 20049
202-434-2064 (p)
202-434-6424 (f)
dkohrman@aarp.org
Counsel for Amicus Curiae AARP
March 23, 2015                               *Counsel of Record

20

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 4,450 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point times roman typeface using Microsoft Word 2010.

Dated:  March 23, 2015                 /s/ Daniel B. Kohrman
                                        Daniel B. Kohrman
                                        Counsel for Amicus Curiae AARP

Appellate Case: 14-3858    Page: 28    Date Filed: 04/08/2015 Entry ID: 4262942

# CERTIFICATE OF SERVICE AND FILING

I hereby certify that on March 23, 2015 the foregoing Brief of Amicus Curiae AARP Supporting Appellant, Melvin Morriss, was electronically filed with the Clerk of the Court for the United States Court of Appeals of the Eighth Circuit using the appellate CM/ECF system which will send notice of such filing to all registered CM/ECF users:

Dated:  March 23, 2015        <u>/s/ Daniel B. Kohrman</u>
                                      Daniel B. Kohrman
                                      Counsel for Amicus Curiae AARP

Appellate Case: 14-3858     Page: 29     Date Filed: 04/08/2015 Entry ID: 4262942