No. 14-3858

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

MELVIN MORRISS, III,

Plaintiff-Appellant,

v.

BNSF RAILWAY COMPANY,

Defendant-Appellee.

_____

On Appeal from the United States District Court
For the District of Nebraska

_____

**BRIEF *AMICI CURIAE* OF THE EQUAL EMPLOYMENT
ADVISORY COUNCIL, CHAMBER OF COMMERCE OF THE UNITED
STATES OF AMERICA AND NATIONAL FEDERATION OF
INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER
IN SUPPORT OF DEFENDANT-APPELLEE
AND IN SUPPORT OF AFFIRMANCE**

_____

Kathryn Comerford Todd
Warren Postman
U.S. CHAMBER
  LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Attorneys for *Amicus Curiae*
Chamber of Commerce of the
United States of America

Rae T. Vann
*Counsel of Record*
NORRIS, TYSSE, LAMPLEY
& LAKIS, LLP
1501 M Street, N.W., Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amicus Curiae*
Equal Employment Advisory Council

Karen R. Harned
Elizabeth Milito
NATIONAL FEDERATION OF
  INDEPENDENT BUSINESS
SMALL BUSINESS LEGAL CENTER
1201 F Street, N.W.
Washington, DC 20004
(202) 406-4443

Attorneys for *Amicus Curiae*
National Federation of
Independent Business
Small Business Legal Center

May 22, 2015

## CORPORATE DISCLOSURE STATEMENT AND STATEMENT OF FINANCIAL INTEREST

Pursuant to Rule 26.1 and Eighth Circuit Local Rule 26.1A, *Amici Curiae* Equal Employment Advisory Council, Chamber of Commerce of the United States of America, and National Federation of Independent Business Small Business Legal Center make the following disclosures:

1)  For non-governmental corporate parties please list all parent corporations:  None.

2)  For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:  None.

<table>
<tr><td>

Kathryn Comerford Todd
Warren Postman
U.S. CHAMBER
LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337


Attorneys for *Amicus Curiae*
Chamber of Commerce of the
United States of America
</td><td>

*s/ Rae T. Vann*
Rae T. Vann
*Counsel of Record*
NORRIS, TYSSE, LAMPLEY
& LAKIS, LLP
1501 M Street, N.W., Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amicus Curiae*
Equal Employment Advisory Council
</td></tr>
</table>

Karen R. Harned
Elizabeth Milito
NATIONAL FEDERATION OF
   INDEPENDENT BUSINESS
SMALL BUSINESS LEGAL CENTER
1201 F Street, N.W.
Washington, DC 20004
(202) 406-4443

Attorneys for *Amicus Curiae*
National Federation of
Independent Business
Small Business Legal Center

May 22, 2015

# RULE 29(c)(5) STATEMENT

No counsel for a party authored this brief in whole or in part.

No counsel or counsel for a party contributed money that was intended to fund the preparation or submission of this brief; and

No person other than *amici curiae*, their members, or their counsel, contributed money that was intended to fund the preparation or submission of this brief.

Respectfully submitted,

Kathryn Comerford Todd
Warren Postman
U.S. CHAMBER
   LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Attorneys for *Amicus Curiae*
Chamber of Commerce of the
United States of America

Karen R. Harned
Elizabeth Milito
NATIONAL FEDERATION OF
   INDEPENDENT BUSINESS
SMALL BUSINESS LEGAL CENTER
1201 F Street, N.W.
Washington, DC 20004
(202) 406-4443

Attorneys for *Amicus Curiae*
National Federation of
Independent Business
Small Business Legal Center

May 22, 2015

*s/ Rae T. Vann*
Rae T. Vann
*Counsel of Record*
 NORRIS, TYSSE, LAMPLEY
 & LAKIS, LLP
1501 M Street, N.W., Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amicus Curiae*
Equal Employment Advisory Council

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTEREST OF THE *AMICI CURIAE* ................................................... 1

STATEMENT OF THE CASE ................................................................... 4

SUMMARY OF ARGUMENT ................................................................. 5

ARGUMENT .......................................................................................... 10

I.   NOTHING IN THE PLAIN TEXT OR LEGISLATIVE HISTORY OF THE
     ADA OR ADAAA WARRANTS TREATING NON-PHYSIOLOGICAL
     OBESITY AS A COVERED IMPAIRMENT ............................................ 10

     A.   The Plain Text Of The ADA, As Amended By The ADAAA,
          Requires Either A Functional Impairment Or A Physiological
          Disorder ........................................................................................ 11

     B.   The Statutory History Confirms That An "Impairment" Requires
          Either A Functional Impairment Or A Physiological Disorder .......... 12

II.  THE EEOC'S LONGSTANDING INTERPRETATION OF PHYSICAL
     IMPAIRMENT CONFIRMS THAT A PHYSIOLOGICAL BASIS IS
     REQUIRED TO TRIGGER COVERAGE OF OBESITY UNDER THE
     ADA .............................................................................................. 17

III. INTERPRETING PHYSICAL IMPAIRMENT TO INCLUDE
     CONDITIONS HAVING NO UNDERLYING PHYSIOLOGICAL CAUSE
     WOULD SIGNIFICANTLY DISADVANTAGE EMPLOYERS AND
     IMPEDE MEANINGFUL ADA COMPLIANCE EFFORTS ..................... 21

     A.   Reading The "Physiological Cause" Limitation Out Of The Definition
          Of Impairment Would Interfere With Efforts To Provide Needed
          Workplace Reasonable Accommodations To Qualified Individuals
          With Disabilities ............................................................................ 21

Appellate Case: 14-3858    Page: 6    Date Filed: 06/01/2015 Entry ID: 4280759

B.    Creating A New Category Of Impairment Based On Obesity Would Expose Employers To A Heightened And Unwarranted Risk Of Regarded-As Liability Under The Expanded ADAAA ......................23

C.    Extending ADA Protection To Mutable Characteristics Like Non-Physiological Obesity Would Produce Absurd Results ......................25

IV.    THE EEOC'S NEW POLICY POSITION REGARDING THE MEANING OF IMPAIRMENT IS NOT ENTITLED TO DEFERENCE ......................28

CONCLUSION ......................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 14-3858    Page: 7    Date Filed: 06/01/2015 Entry ID: 4280759

# TABLE OF AUTHORITIES

FEDERAL CASES

*Christopher v. SmithKline Beecham Corp.*,
     __ U.S. __, 132 S. Ct. 2156 (2012)...............................................................9, 29

*EEOC v. Resources for Human Development, Inc.*,
     827 F. Supp. 2d 688 (E.D. La. 2011)...........................................................7, 19

*EEOC v. Watkins Motor Lines*, 463 F.3d 436 (6th Cir. 2006) ...........................7, 19

*Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997)............................7, 19, 20

*Hill v. Verizon Maryland, Inc.*, 2009 WL 2060088 (D. Md. July 13, 2009).7, 19, 20

*School Board of Nassau County, Florida v. Arline*, 480 U.S. 273 (1987)........14, 15

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), *superseded by statute*, ADA
     Amendments Act, Pub. Law No. 110-325, 122 Stat. 3553 (2008)...............12, 13

*Toyota Motor Manufacturing, Inc. v. Williams*, 534 U.S. 184 (2002), *superseded
     by statute*, ADA Amendments Act, Pub. Law No. 110-325, 122 Stat. 3553
     (2008) ..........................................................................................................12, 13

FEDERAL STATUTES

ADA Amendments Act,
     Pub. Law No. 110-325, 122 Stat. 3553 (2008).........................................*passim*

Americans with Disabilities Act,
     42 U.S.C. §§ 12101 *et seq.* ....................................................................*passim*

     42 U.S.C. § 12102...............................................................................................20

     42 U.S.C. § 12102(1).......................................................................................6, 10

     42 U.S.C. § 12102(3)(A) ...........................................................................10, 14, 23

     42 U.S.C. § 12102(3)(B).....................................................................................23

Appellate Case: 14-3858     Page: 8     Date Filed: 06/01/2015 Entry ID: 4280759

42 U.S.C. § 12102(4) ...................................................................................10

42 U.S.C. § 12102(4)(B) ..............................................................................13

42 U.S.C. § 12112(a) ...............................................................................5, 10

LEGISLATIVE HISTORY

H.R. Rep. No. 110-730 (2008) ...........................................................16, 23, 24

Statement of the Managers to Accompany S. 3406, The Americans With
    Disabilities Act Amendments Act of 2008, 154 Cong. Rec. S8344 (daily ed.
    Sept. 11, 2008) .....................................................................13, 14, 15

FEDERAL REGULATIONS

29 C.F.R. § 1630.2(h)(1) ........................................................................5, 6, 15

29 C.F.R. § 1630.15(f) ..................................................................................24

29 C.F.R. app. § 1630.2(h) ...........................................................................17

29 C.F.R. app. § 1630.2(l) ............................................................................23

45 C.F.R. § 84.3(j)(2)(i) ................................................................................15

STATE STATUTES

Mich. Comp. Laws § 37.2202 ........................................................................28

LOCAL ORDINANCES

D.C. Code § 2-1402.11(a) ........................................................................... 28

OTHER AUTHORITIES

EEOC Compliance Manual § 902.2 Impairment ..........................................18, 26

Appellate Case: 14-3858    Page: 9    Date Filed: 06/01/2015 Entry ID: 4280759

Erica P. Gunderson, Ph.D., *Childbearing and Obesity in Women: Weight Before, During, and After Pregnancy*, 36 Obstetrics and Gynecology Clinics of North America (June 2009)..........................................................................27

Jessica L. Roberts, *Healthism and the Law of Employment Discrimination*, 99 Iowa L. Rev. 571 (2014)..........................................................................19

Oxford English Dictionary (Oxford Univ. Press 2015).........................................11

Press Release, U.S. Senate Committee on Health, Education, Labor, & Pensions, *Alexander to EEOC: Agency with Critical Task Has Gotten Far Afield of Mission* (May 19, 2015)..................................................................29

U.S. Census Bureau, Statistical Abstract of the United States, Section 3 Health and Nutrition, Table 211 (2012).........................................................7, 22

U.S. National Library of Medicine, National Institutes of Health, MedlinePlus ....21

Appellate Case: 14-3858    Page: 10    Date Filed: 06/01/2015 Entry ID: 4280759

The Equal Employment Advisory Council, Chamber of Commerce of the United States of America, and National Federation of Independent Business Small Business Legal Center respectfully submit this brief *amici curiae* contingent on the granting of the accompanying motion for leave. The brief urges the Court to affirm the district court's ruling below and thus supports the position of Defendant-Appellee BNSF Railway Company.

## INTEREST OF THE *AMICI CURIAE*

The Equal Employment Advisory Council (EEAC) is a nationwide association of employers organized in 1976 to promote sound approaches to the elimination of employment discrimination. Its membership includes nearly 300 major U.S. corporations. EEAC's directors and officers include many of industry's leading experts in the field of equal employment opportunity. Their combined experience gives EEAC a unique depth of understanding of the practical, as well as legal, considerations relevant to the proper interpretation and application of equal employment policies and requirements. EEAC's members are firmly committed to the principles of nondiscrimination and equal employment opportunity.

The Chamber of Commerce of the United States of America (the Chamber) is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than three million companies and

professional organizations of every size, in every industry sector, and from every region of the country.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus* briefs in cases that raise issues of concern to the nation's business community.

The National Federation of Independent Business (NFIB) Small Business Legal Center is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses.  NFIB is the nation's leading small business association, with offices in Washington, D.C. and all 50 state capitals.  Founded in 1943 as a nonprofit, nonpartisan organization, NFIB's mission is to promote and protect the right of its members to own, operate and grow their businesses.  NFIB represents 350,000 member businesses nationwide.  The NFIB Small Business Legal Center represents the interests of small business in the nation's courts and participates in precedent setting cases that will have a critical impact on small businesses nationwide, such as the case before the Court in this action.

*Amici's* members are employers or representatives of employers subject to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, as amended, as well as other labor and employment statutes and regulations.  As

2

potential defendants to claims of workplace disability discrimination, *amici* have a direct and ongoing interest in the issues presented in this appeal. The district court ruled correctly that obesity does not constitute an "impairment" for purposes of establishing an actual or regarded-as disability under the ADA unless it is caused by an underlying physiological disorder, as every appellate court and the overwhelming majority of district courts to have considered the issue have held. Whether and to what extent the ADA contemplates coverage of conditions or personal characteristics that do not have a physiological basis is an issue of great importance to the employer community.

Because of their interest in the application of the nation's equal employment laws, *amici* have filed numerous briefs as *amicus curiae* in cases before the U.S. Supreme Court, this Court, and others involving the proper construction and interpretation of the ADA and other federal laws. Thus, they have an interest in, and a familiarity with, the issues and policy concerns involved in this case. *Amici* seek to assist the Court by highlighting the impact its decision may have beyond the immediate concerns of the parties to the case.

Accordingly, this brief brings to the attention of the Court relevant matters that have not already been brought to its attention by the parties. Because of their experience in these matters, *amici* are well-situated to brief the Court on the

relevant concerns of the business community and the significance of this case to employers.

## STATEMENT OF THE CASE

On May 3, 2011, Plaintiff Melvin Morriss received a conditional offer of employment as a Diesel machinist with BNSF. He is 5 feet 10 inches tall and at the time weighed anywhere between 281 and 285 pounds. *Morriss v. BNSF Rwy. Co.*, 30 A.D. Cas. 1692, 2014 WL 6612604, at *1 (D. Neb. Nov. 20, 2014).

After receiving the conditional job offer, Morriss underwent a post-offer, pre-employment medical examination, which revealed that his Body Mass Index (BMI) was more than 40. *Id.* Based on that information, BNSF withdrew the offer pursuant to company medical policy, which considers individuals with BMI classifications of 40 or more to be at risk for serious medical issues and thus not qualified (at least while the BMI remains too high) to perform in certain jobs designated as "safety sensitive" like that of a machinist. *Id.*

Morriss sued BNSF in federal court, claiming that he was not hired because of his obesity, which he contended was an actual disability under the ADA. *Id.* at *1-*2. Alternatively, he argued that BNSF impermissibly regarded him as having an actual or perceived impairment and rescinded his job offer on that basis, also in violation of the ADA, as amended by the ADA Amendments Act (ADAAA), Pub. Law No. 110-325, 122 Stat. 3553 (2008). *Id.*

4

BNSF moved for summary judgment on the grounds that (1) Morriss is not an individual with an actual disability; (2) BNSF did not regard him as having an actual or perceived impairment; and (3) company medical staff "properly determined that plaintiff was not currently qualified for the position of diesel mechanic due to the significant health and safety risks associated with Class III obesity (BMI ≥ 40)." *Id.* The district court agreed as to ground (1) and (2), did not reach ground (3), and dismissed the action with prejudice. *Id.* at *3.

Relying on the regulatory definition of "physical impairment," 29 C.F.R. § 1630.2(h)(1), the court pointed out that the EEOC itself distinguishes between conditions that are, and are not, the "result of a physiological disorder" (and thus impairments). *Id.* at *2. Because Morriss testified that there is no underlying physiological cause for his obesity, and that he has never suffered from any medical conditions associated with, or been limited in any way due to, obesity (and there was no evidence that BNSF believed otherwise), the district court concluded that his obesity did not constitute a physical impairment under the ADA. *Id.* This appeal ensued.

## SUMMARY OF ARGUMENT

The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, prohibits discrimination against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). Disability is defined as: (1) "a physical or mental impairment

5

that substantially limits one or more major life activities …" ("actual" disability); (2) "a record of such an impairment" ("record of" disability); or (3) an actual or perceived impairment that is not transitory and minor ("regarded as" disability). 42 U.S.C. § 12102(1). The existence of an "impairment" is crucial to establishing coverage under any prong of the statutory definition of disability.

Morriss and his *amici* contend that his physical "condition" should be considered an "impairment" even when it neither causes a functional impairment nor reflects any physiological disorder. This reading conflicts with the plain text of the ADA and also is inconsistent with its legislative history and that of the 2008 ADA Amendments Act (ADAAA), Pub. Law No. 110-325, 122 Stat. 3553 (2008), however. In particular, Congress in revising the ADA intended that the meaning of impairment remain unchanged, and expressed no desire to expand its scope to encompass non-physiological conditions like mutable obesity.

The EEOC, in its own ADA implementing regulations, defines impairment as "[a]ny *physiological* disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems …." 29 C.F.R. § 1630.2(h)(1). The agency explains elsewhere that the term *excludes* purely "physical, psychological, environmental, cultural, and economic characteristics"– such as weight – that have no underlying physiological cause.

Appellate Case: 14-3858    Page: 16    Date Filed: 06/01/2015 Entry ID: 4280759

Thus, like the statutory text and history, the EEOC's own longstanding regulatory interpretation of the ADA confirms that a physiological basis is needed in order to trigger coverage of obesity as an ADA impairment. Most federal courts, including the courts of appeals to have considered the issue, agree that absent some physiological cause, obesity alone cannot constitute a physical impairment in the ADA context. *See, e.g., EEOC v. Watkins Motor Lines*, 463 F.3d 436 (6th Cir. 2006); *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997); *see also Hill v. Verizon Maryland, Inc*., 2009 WL 2060088 (D. Md. July 13, 2009) (unpublished); *c.f. EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688 (E.D. La. 2011).

Furthermore, aside from contravening the meaning and intent of the ADA as interpreted by the courts and the EEOC, expanding the definition of "impairment" to encompass conditions having no physiological cause also would have significant practical implications for employers, as well as employees with disabilities. Between 30 and 38 percent of U.S. working-age adults (age 18 to 64) are obese.[1] Under Morriss's and his *amici's* interpretation, *any* of those qualifying as obese, regardless of the underlying reason, could claim to have an ADA impairment and,

---

[1] U.S. Census Bureau, Statistical Abstract of the United States, Section 3 Health and Nutrition, Table 211 (2012), *available at* http://www.census.gov/compendia/statab/2012edition.html

7

under the expanded ADAAA, be entitled to workplace accommodations as an individual with an actual disability.

Expanding the meaning of "impairment" to include non-physiological obesity also would expose employers to a significantly increased risk of claims for "regarded as" disability discrimination – potential liability for which also turns on the presence of an ADA impairment, either actual or perceived – without necessarily making it easier for workers to establish coverage on that basis. That is because even assuming non-physiological obesity can be an impairment, it often is characterized by substantial fluctuations, as those experienced here by Morriss himself, and thus is inherently transitory.

In addition, while fluctuating obesity can increase an individual's risk for future illness or disability, often those with obesity are otherwise "healthy" and experience *no* limitations because of it, as was the case here. Morriss himself attested to the fact that he had no current health problems or functional limitations as a result of his obesity classification. Accordingly, even if an impairment, Morriss' obesity was both transitory *and* minor, and thus did not trigger coverage under the regarded-as prong.

This Court should reject the EEOC's attempt to change its longstanding interpretation of "impairment" for ADA disability coverage purposes through policy arguments made in its *amicus* brief in this case. The agency's evolving

8

views regarding the circumstances under which mutable obesity, or any other condition having no physiological cause, can trigger ADA coverage are inconsistent with the text, legislative history and underlying purposes of the Act, depart from its own regulatory definition of "impairment," and would conflict with decisions of every court of appeals to have decided the issue. Accordingly, the EEOC's views are unsound and not entitled to any judicial deference. In addition, to the extent that adoption and enforcement of the agency's new policy interpretation has substantial potential for "unfair surprise" within the regulated community, it should be disregarded. *See Christopher v. SmithKline Beecham Corp.*, __ U.S. __, 132 S. Ct. 2156, 2168 (2012).

If this Court were to accept the argument that obesity need not have a physiological cause in order to constitute an impairment under the ADA, then a similar argument could be made for many other statuses or conditions, including smoking or ordinary pregnancy, for instance. Permitting individuals to establish ADA coverage based on conditions that have no physiological basis would confer legal rights (and new obligations on employers) that simply are not available under existing law. Congress easily could have expanded the meaning of "impairment" in the ADAAA – or at any time since then – if it so chose. But it expressly declined to do so. Indeed, it is within the sole purview of Congress to expand or constrict the scope of the ADA's legal protections, and neither the EEOC nor the courts

9

should purport to impose on employers legal requirements in the absence of congressional action.

## ARGUMENT

## I. NOTHING IN THE PLAIN TEXT OR LEGISLATIVE HISTORY OF THE ADA OR ADAAA WARRANTS TREATING NON-PHYSIOLOGICAL OBESITY AS A COVERED IMPAIRMENT

The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability …." 42 U.S.C. § 12112(a). An individual with a disability is one who either: (1) has "a physical or mental impairment that substantially limits one or more major life activities …" ("actual" disability); (2) has "a record of such an impairment" ("record of" disability); or (3) is regarded as having an actual or perceived impairment that is not transitory and minor ("regarded as" disability). 42 U.S.C. § 12102(1). Each subpart of the "disability" definition requires the existence of an "impairment," without which an individual cannot claim the protections of the Act.

As described further below, the ADA Amendments Act, Pub. Law No. 110-325, 122 Stat. 3553 (2008), amended the ADA to provide that the term "substantially limits" should be broadly construed, 42 U.S.C. § 12102(4), and that a "regarded as" disability exists "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Morriss

10

concedes that he is not substantially limited in one or more major life activities; accordingly, this appeal directly concerns only an allegation that BNSF "regarded" him as having an impairment by considering his weight.

Specifically, Morriss and his *amici* contend that his physical "condition" should be considered an "impairment" even when it neither causes a functional impairment nor reflects any physiological disorder. This reading conflicts with the plain text of the statute, disregards the statutory history, and would produce an unadministrable standard. It also is belied by the EEOC's own guidance and would produce counterproductive results.

### A. The Plain Text Of The ADA, As Amended By The ADAAA, Requires Either A Functional Impairment Or A Physiological Disorder

The most fundamental problem with Morriss's position is that it ignores the plain meaning of the term "impairment." An "impairment" is defined as "[t]he state of being impaired, especially in a specified faculty." Oxford English Dictionary (Oxford Univ. Press 2015).[2] To "impair," in turn, means to "[w]eaken or damage something (especially a human faculty or function)." *Id.* Thus, impairment in the context of the ADA most naturally refers to a *functional* weakness, or disadvantage, or it may also refer to some sort of *damage* or physiological disorder.

[2] *Available at* http://www.oxforddictionaries.com/us/definition/american_english/impairment.

Appellate Case: 14-3858    Page: 21    Date Filed: 06/01/2015 Entry ID: 4280759

However, Morriss, by his own admission, is not "impaired" in any sense of the word. He concededly can perform all relevant functions, and he suffers from no physiological disorder. Nor did BNSF regard him as being functionally impaired or suffering from any physiological damage or disorder. According to the record, at all times in question, Morriss was, and was regarded as, a healthy, fully functioning individual, not an impaired one.

### B. The Statutory History Confirms That An "Impairment" Requires Either A Functional Impairment Or A Physiological Disorder

In 2008, Congress enacted the ADAAA, which expanded the scope and meaning of disability under the ADA as interpreted to that point by the federal courts. Pub. Law No. 110-325, 122 Stat. 3553 (2008). In particular, Congress legislatively overturned several U.S. Supreme Court rulings, including notably *Toyota Motor Manufacturing, Inc. v. Williams,* 534 U.S. 184 (2002), *superseded by statute*, ADAAA, Pub. Law No. 110-325, 122 Stat. 3553 (2008), and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), *superseded by statute*, ADA Amendments Act, Pub. Law No. 110-325, 122 Stat. 3553 (2008).

In *Williams,* the Court rejected the ADA claim of an employee with carpal tunnel syndrome who could not perform a "limited class of manual tasks," reasoning that, to be substantially limited in a major life activity, a person must have an impairment that "prevents or severely restricts" him or her from performing tasks that are "of central importance to most people's daily lives." 534

12

U.S. at 198.  In *Sutton*, the Court rejected the ADA claims of employees with "severe myopia" because, when mitigated by corrective lenses, this physiological disorder did not "substantially limit" any major life activity.  527 U.S. at 488-89. In reaching this holding, the Court in *Sutton* rejected the argument of Justice Stevens's dissent that based on earlier decisions interpreting the Rehabilitation Act of 1973, the ADA should be read to forbid discrimination on the basis of medical conditions, such as myopia, diabetes, or epilepsy, even when those conditions did not result in functional impairment.  *Id.* at 499-500 (Stevens, J., dissenting) (citing *School Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273 (1987)).

Thus, in *Toyota* and *Sutton* the Supreme Court (a) imposed a relatively high bar before it would find that a disorder "substantially limited" a major life activity and (b) refused to recognize an "impairment" based solely on a physiological disorder, in the absence of any functional impairment.

Congress enacted the ADAAA to address both these holdings.  Specifically, Congress called on courts to take a broader approach than the Supreme Court had in *Toyota* when deciding whether a condition "substantially limits" a major life activity.  *See, e.g.,* 42 U.S.C. § 12102(4)(B) ("[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"); Statement of the Managers to Accompany S. 3406, The Americans With Disabilities Act Amendments Act of 2008 ("Managers'

13

Statement"), 154 Cong. Rec. S8344, S8346 (daily ed. Sept. 11, 2008) (calling for an approach to "substantially limits" that is "lower than the strict or demanding standard created by the Supreme Court in *Toyota*").

In addition, Congress revised the standard governing "regarded as" liability to cover physiological disorders even where they did not impose functional impairments, as urged by Justice Stevens. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.") (emphasis added). The Senate Managers of the ADAAA explained that in their view, the original ADA relied "extensively" on the Supreme Court's reasoning in *School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273 (1987), that discrimination on the basis of medical conditions (in *Arline*, tuberculosis) was unlawful even in the absence of a functional impairment. *See* Managers' Statement, 154 Cong. Rec. S8843, S8846.

Critically, however, Congress never altered the definition of "impairment" to include conditions that were *neither* a functional impairment *nor* a physiological disorder. As the Senate Managers' report explained, "[t]he bill does not provide a definition for the terms 'physical impairment' or 'mental impairment.' *The*

14

*managers expect that the current regulatory definition of these terms . . . will not change*." Managers' Statement, 154 Cong. Rec. S8845 (emphasis added).

Likewise, while Congress directed the EEOC to revise its regulations interpreting the terms "substantially limits" and "major life activities," Managers' Statement, 154 Cong. Rec. at S8345-S8346, it did not call upon the EEOC to alter any other aspect of its ADA regulations, including the longstanding regulatory definition of "physical or mental impairment." Nor did it express any concern over the manner in which that term traditionally had been construed by the EEOC or the courts. Accordingly, when it promulgated ADAAA-conforming regulations, the EEOC continued to define "physical impairment" as:

> Any *physiological disorder* or condition, *cosmetic disfigurement*, or *anatomical loss* affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1) (emphasis added).[3] In sum, Congress still limited coverage under the ADA to individuals with a functional or physiological impairment.

---

[3] The EEOC's regulatory definition of "physical or mental impairment" is derived from regulations promulgated by the U.S. Department of Health and Human Services interpreting the Rehabilitation Act of 1973. *See* 45 C.F.R. § 84.3(j)(2)(i); *see also Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 280 (1987).

Appellate Case: 14-3858    Page: 25    Date Filed: 06/01/2015 Entry ID: 4280759

Nor is it surprising that Congress decided not to expand the definition of impairment. The ADAAA was enacted to provide protection for functional impairments and medical disorders such as carpal tunnel syndrome, myopia, diabetes, epilepsy, or tuberculosis. *See, e.g.,* H.R. Rep. 110-730, pt. 2, at 6 (2008). Amending the definition of "impairment" to sweep in "conditions" that were neither a functional impairment nor a physiological disorder was not necessary to address this purpose.

Moreover, had Congress expanded the coverage of the ADA to include physical "conditions" that are neither functional impairments nor physiological disorders, it would have been hard-pressed to come up with a principled stopping point. That conundrum is amply illustrated by the EEOC's brief in this case. Having rejected the easily administrable rule of requiring a physiological disorder or functional impairment, the EEOC proposes that "weight" can be an impairment when it is outside of the "normal" range. Yet the term "normal" appears nowhere in the ADA, and the EEOC never explains *why* abnormal weight, in the absence of a functional disadvantage or physiological disorder, is in any way impairing. Indeed, the EEOC cannot even settle itself on a single definition of weight that is outside a normal range and instead offers three different, possible definitions. EEOC Br. at 21-22 (proposing a standard based on a BMI over 40, *or* 100 percent of ideal body weight, *or* 100 pounds over ideal body weight). This inability to

16

identify a definition of protected obesity, let alone explain how it is connected to the text of the statute, illustrates just how far Morriss's position strays from Congressional intent.

## II. THE EEOC'S LONGSTANDING INTERPRETATION OF PHYSICAL IMPAIRMENT CONFIRMS THAT A PHYSIOLOGICAL BASIS IS REQUIRED TO TRIGGER COVERAGE OF OBESITY UNDER THE ADA

While entitled to no deference from this Court, *see infra* Part IV*.,* the EEOC's own enforcement guidance further confirms that the ADA was never intended to encompass the claims Morriss makes in this case. The agency in its ADA Interpretive Guidance provides:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are *not the result of a physiological disorder*.

29 C.F.R. app. § 1630.2(h) (emphasis added). Thus, even the EEOC treats conditions that are caused by physiological disorders as impairments, while excluding purely "physical, psychological, environmental, cultural, and economic characteristics"– such as weight, among others – that have no underlying physiological cause. *Id.*

To be sure, when the EEOC revised its ADA regulations in 2011, it deleted language providing that ordinary obesity generally will not be considered a

17

covered disability – even though by definition, obesity *always* results in weight falling outside of normal range. And the agency's Compliance Manual section on the definition of "disability" suggests that "severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment." EEOC Compl. Man. § 902.2 Impairment (citations and footnote omitted). Yet, as explained above, the EEOC is unable to explain why weight, or obesity, outside a "normal range" is by itself an "impairment," or even to offer a single definition of "normal range."

As the district court found, the EEOC therefore recognized the intuitive statutory distinction between protected traits that reflect physiological disorders and are static in nature – such as irreversible blindness, for instance – and personal conduct-based characteristics – such as non-physiological obesity. Such a distinction comports with the aims and purposes of the ADA by offering a manageable standard that protects those with immutable physical or mental traits from unlawful discrimination, without sweeping in myriad non-static conditions over which there exists some level of personal control. The difference between immutable traits and conduct-based characteristics has been explained as follows:

> "[T]raits" are static characteristics that, once acquired, do not necessitate further conduct to maintain. Take disability as an example. While an individual may acquire a disability through voluntary--even morally reprehensible--conduct (such as getting into an automobile accident while drunk driving), once acquired, the status of disability is fixed. If an individual becomes paralyzed in a car

18

> crash, the continued state of paralysis mandates no subsequent conduct to maintain.
>
> Conversely, "conduct" indicates a status that requires additional action to perpetuate. While conduct may range from voluntary to involuntary, what distinguishes conduct-based statuses from trait-based statuses is not the subject's willingness to engage in the particular activity, but rather the need for additional action to maintain the status.

Jessica L. Roberts, *Healthism and the Law of Employment Discrimination*, 99 Iowa L. Rev. 571, 604 (2014) (footnote omitted).  Thus, a health condition having no underlying physiological basis that can be improved or corrected entirely through personal action and responsibility – as is the case with mutable obesity – without more, is unsuitable for ADA protection.

Federal courts generally agree that absent some physiological cause, obesity alone cannot constitute a physical impairment in the ADA context.  *See, e.g., EEOC v. Watkins Motor Lines*, 463 F.3d 436 (6th Cir. 2006); *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997); *see also Hill v. Verizon Maryland, Inc.*, 2009 WL 2060088 (D. Md. July 13, 2009) (unpublished); *c.f. EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688 (E.D. La. 2011).  In *EEOC v. Watkins Motor Lines*, for instance, the Sixth Circuit ruled that the plain text of the ADA, coupled with the EEOC's regulatory pronouncements on the question, require that an individual's physical characteristic "relate to a physiological disorder in order to qualify as an ADA impairment."  463 F.3d at 442.  Since the plaintiff, who

19

weighed over 400 pounds at the time of his employment termination, could not point to an underlying physiological explanation for his obesity, the Sixth Circuit concluded he was not entitled to the protection of the ADA.

Similarly, the Second Circuit in *Francis v. City of Meriden* found that because the plaintiff there failed to show that his employer regarded him as having a "physiological weight-related disorder," 129 F.3d at 285, he could not sue for regarded-as disability discrimination. A contrary rule, it reasoned, would allow the regarded-as prong to become "a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed" from the purposes and intent of the ADA. *Id.* at 287; *see also Hill v. Verizon Maryland, Inc.*, 2009 WL 2060088, at *8 (D. Md. July 13, 2009) (noting, in dismissing obesity disability claim, that "the ADA does not extend to all 'abnormal' physical characteristics") (unpublished).[4]

Generally speaking, an individual will be considered "obese" if he or she has a BMI of 30 or higher. According to the National Institutes of Health, "Obesity means having too much body fat. It is different from being overweight, which

---

[4] *Amicus* EEOC argues that these cases no longer are viable in light of the ADAAA. As noted, however, the ADAAA expanded considerably the concepts of "substantially limits" and "major life activities" as those terms are used in the ADA, but retained the definition of "physical impairment." 42 U.S.C. § 12102.

Appellate Case: 14-3858    Page: 30    Date Filed: 06/01/2015 Entry ID: 4280759

means weighing too much."[5]  As the cases above illustrate, obesity having no physiological root cause is an inherently mutable characteristic that can change literally from day-to-day, a point exemplified here by Morriss's own weight and related BMI fluctuations.

Expanding the scope of the ADA to encompass individuals with fluctuating, and thus controllable, obesity would be contrary to longstanding regulatory and judicial constructions of the Act, and would open the door to a significant class of potentially disabled persons – coverage of which was never contemplated by Congress.  In addition, coverage of mutable obesity would expose employers to potentially widespread requests for reasonable accommodations and failure-to-accommodate litigation, which also goes well beyond the scope of Congress's intent in enacting either the ADA or the ADAAA.

## III.  INTERPRETING PHYSICAL IMPAIRMENT TO INCLUDE CONDITIONS HAVING NO UNDERLYING PHYSIOLOGICAL CAUSE WOULD SIGNIFICANTLY DISADVANTAGE EMPLOYERS AND IMPEDE MEANINGFUL ADA COMPLIANCE EFFORTS

### A.  Reading The "Physiological Cause" Limitation Out Of The Definition Of Impairment Would Interfere With Efforts To Provide Needed Workplace Reasonable Accommodations To Qualified Individuals With Disabilities

If this Court were to recognize non-trait-based obesity as an impairment under the ADA, the practical impact on covered employers would be immediate

---

[5]  U.S. National Library of Medicine, National Institutes of Health, MedlinePlus, *available at* http://www.nlm.nih.gov/medlineplus/obesity.html.

Appellate Case: 14-3858     Page: 31     Date Filed: 06/01/2015 Entry ID: 4280759

and profound. Newly ADA-protected obese workers struggling with physically strenuous aspects of the job – such as retrieving supplies from shelves or drawers or simply walking from one end of the production floor to the other, for instance – could seek any number of accommodations to relieve them of those tasks. Others might demand different ADA accommodations, such as custom furniture or specially-made uniforms. Given the substantial proportion of working-age adults who are obese[6] – and thus could seek such workplace accommodations – employers could easily become overwhelmed handling such requests, diverting time and resources from the needs of individuals with impairments that, without question, do fall within the ADA's purview.

Moreover, employees also sometimes seek unreasonable accommodations. Employers who deny such requests may ultimately prevail against a discrimination claim by proving that the request was unreasonable, but not before expending the time and expense of litigating such suits. In defining disability in the ADA to include certain physiological conditions or functional impairments, Congress accepted a certain social cost in the form of unfounded litigation in order to obtain the benefit of accommodating those disabilities. As explained above, however, Congress did *not* choose to subject employers to the massive potential for litigation

---

[6] 30.3% of American adults age 18-44 and 37.3% of American adults age 45-64 are obese. U.S. Census Bureau, Statistical Abstract of the United States, Section 3 Health and Nutrition, Table 211 (2012), *available at* http://www.census.gov/compendia/statab/2012edition.html

Appellate Case: 14-3858    Page: 32    Date Filed: 06/01/2015 Entry ID: 4280759

that would arise if courts expanded the concept of disability to include conditions that are neither physiological nor functional in nature.

### B. Creating A New Category Of Impairment Based On Obesity Would Expose Employers To A Heightened And Unwarranted Risk Of Regarded-As Liability Under The Expanded ADAAA

As noted, in addition to discrimination on the basis of "actual" or "record of" disability, the ADAAA also bars employers from taking adverse action against an individual based on an actual or perceived physical or mental impairment that is not "transitory and minor."  Specifically:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).  However, the "regarded as" provision "shall not apply to impairments that are transitory and minor."  42 U.S.C. § 12102(3)(B). The ADAAA defines "transitory impairment" as any impairment with "an actual or expected" duration of six months or less, *id.*, but neither the statute nor the EEOC's implementing regulations define the term "minor."  According to the ADAAA's legislative history, the "transitory and minor" limitation on "regarded as" claims was included by Congress so as to avoid coverage of "common ailments."[7]  H.R.

---

[7] Despite the fact that the EEOC views the "transitory and minor" limitation as an "exception to the general rule for broad coverage under the 'regarded as' prong," 29 C.F.R. app. § 1630.2(l),  and thus characterizes it in its ADAAA regulations as

Appellate Case: 14-3858     Page: 33     Date Filed: 06/01/2015 Entry ID: 4280759

Rep. No. 110-730, pt. 1, at 14 (2008). "Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f).

Assuming *arguendo* that fluctuating obesity with no physiological cause somehow satisfies the meaning of "impairment" for ADA disability coverage purposes, it nevertheless cannot be considered anything but transitory, especially given the ability of the individual to control and manage the condition. As illustrated in this case, BNSF's policy of viewing candidates with a BMI of 40 or higher as "*currently not qualified*" itself recognizes that the status of an individual with disqualifying obesity could change. *Morriss v. BNSF Rwy. Co.*, 30 A.D. Cas. 1692, 2014 WL 6612604, at *1 (D. Neb. Nov. 20, 2014). It is undisputed that Morriss's obesity had no effect on his daily activities and that he was otherwise "healthy" despite his weight. It also is undisputed that, due to well-founded concerns regarding the heightened risk of future medical complications posed by his obesity, Morriss was disqualified from employment in a BNSF-designated safety-sensitive position, but *only* until such time as his BMI dropped below 40.

In light of the uncontroverted facts, it is objectively reasonable to consider Morriss's obesity to have been both transitory and minor, and thus beyond the scope of coverage under the regarded-as prong. Indeed, Morriss's weight varied

an affirmative employer defense, Congress expressly provided that coverage does not apply to impairments that are transitory and minor.

24

between the two times it was measured, and both times was close to falling below a BMI of 40. EEOC Br. at 4, 21. Moreover, BNSF's BMI policy, application of which resulted in Morriss's disqualification, stemmed from a medical concern regarding *future* medical complications and problems due to Class III obesity as indicated by his BMI. Future disposition for illness or injury qualifies neither as an "actual" nor "record of" disability, however, and also does not fit within the "regarded as" construct, *i.e.*, an actual or perceived impairment that is not "transitory and minor." Because Morriss's fluctuating obesity was both transitory and minor, even if considered an actual "impairment," it does not qualify as a "regarded as" disability.

### C. Extending ADA Protection To Mutable Characteristics Like Non-Physiological Obesity Would Produce Absurd Results

The introductory sentence of the AARP's *amicus* brief in support of reversal declares that "[d]iscrimination against people with obesity is 'both a social justice issue and a priority for public health.'" AARP Br. at 2 (citation omitted). In attempting to make the case that obesity categorically constitutes a physical impairment for both actual and regarded-as disability coverage purposes, the AARP points out that "obesity causes physical damage and changes, *which may not produce current symptoms*, but which are *likely over time to lead to serious health conditions*, including diabetes, heart disease, high blood pressure, and sleep apnea." *Id.* at 4 (emphasis added). In other words, AARP argues that obesity

25

should be considered a physical impairment for ADA purposes, solely based on its

potential *future* impact on an individual's health.

The EEOC in its *amicus* brief essentially concurs, arguing that "an

individual is not required to show an underlying physiological cause to establish

the impairment of morbid obesity." EEOC Br. at 13. In doing so, it downplays its

longstanding ADA enforcement guidance, which consistently has expressed the

view that "characteristic predisposition to illness or disease" is not a physical

impairment, nor are impairments with no physiological basis. EEOC Compl. Man.

§ 902.2 Impairment. As to the latter point, the EEOC now contends that the most

"natural" reading of that language is that it requires only those with "'normal'

range" obesity to demonstrate a physiological cause. EEOC Br. at 17. As noted,

however, the EEOC's new gloss on "impairment" – which would implicate

coverage for obesity under all three prongs of the statutory definition of disability –

is unsupported by the EEOC's own regulations and sub-regulatory enforcement

guidance, as well as a number of federal court rulings.

Adopting Morriss's and his *amici's* expansive construction of the term

impairment in the obesity context also would lead to coverage of other

characteristics and conditions that to this point have never fallen within the scope

of the ADA. For example, there has been a substantial increase in the rate of

overweight and obesity in women of childbearing age. Not only are more women

26

getting pregnant while obese, but their obesity is persisting after childbirth. According to one study, "U.S. women aged 35 to 44 years have experienced the greatest increase in obesity prevalence in the past 45 years." Erica P. Gunderson, Ph.D., *Childbearing and Obesity in Women:  Weight Before, During, and After Pregnancy*, 36 Obstetrics and Gynecology Clinics of North America, 317 (June 2009) (footnote omitted).[8]  In addition:

> [Forty-five percent] of women begin pregnancy overweight or obese, up from 24% in 1983.  Gestational weight gain is also higher than ever before, with 43% of pregnant women gaining more than is recommended. …  Weight gain before, during, and after pregnancy not only affects the current pregnancy but may also be a primary contributor to the future development of obesity in women during midlife and beyond.

*Id.* (footnotes omitted).

If this Court were to accept the argument that obesity need not have a physiological cause in order to constitute an impairment under the ADA, then a similar argument could be made for many other statuses or conditions.  The following hypothetical illustrates the unintended consequences of treating smoking, for instance, as Morriss would treat obesity:

> ABC Co. extends a conditional job offer but rescinds the offer after learning that the candidate smokes two packs of cigarettes a day.  The candidate claims to have no present limitations, but the employer is concerned about a number of matters relating to the candidate's habit, including productivity on the job from day one, as well as his future ability to perform in the position (assume he has applied for a

---

[8] *Available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2930888/.

Appellate Case: 14-3858      Page: 37      Date Filed: 06/01/2015 Entry ID: 4280759

physically strenuous job). The plaintiff's status as a smoker has no physiological basis. However, since smoking is "likely over time to lead to serious health conditions," AARP Br. at 4, under Morriss' and his *amici's* formulation, it should be treated as an ADA impairment. Doing so would expose ABC Co. to potential liability for, at a minimum, unlawful regarded as disability discrimination.

The absurdity of treating smoking itself as an ADA impairment would have sweeping negative consequences for private and public sector employers, many of which (1) ban smoking at or around work and/or (2) maintain smoking cessation programs as part of their wellness programs, for instance. As in the case of obesity, once smoking is considered an impairment, then under the ADAAA, it is far easier for smokers to establish coverage, resulting in the extension of legal protections that simply are not available under existing law.[9]

## IV. THE EEOC'S NEW POLICY POSITION REGARDING THE MEANING OF IMPAIRMENT IS NOT ENTITLED TO DEFERENCE

Rather than exercising its substantive rulemaking authority to change longstanding and settled legal principles regarding what constitutes an "impairment" under the ADA, the EEOC instead is attempting to do so through

---

[9] In Michigan, it is unlawful for an employer to "[f]ail or refuse to hire or recruit, discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … weight …" Mich. Comp. Laws § 37.2202. Similarly, the District of Columbia prohibits workplace discrimination on the basis of "personal appearance." D.C. Code § 2-1402.11(a). If Congress wished to enact similar legislation, or amend the ADA to treat smokers, the obese, pregnant women, or excessively short, tall, or unattractive persons as individuals with ADA-protected impairments, it could do so.

28

policy arguments made in its *amicus* brief in this case.[10]  As described above, the agency's position ignores the plain meaning of the term "impairment."  Moreover, because its new stance on obesity as an "actual impairment" under the ADA is not supported by its own views on the subject, EEOC Br. at 16-22, it does not represent a sound and well-reasoned position and therefore is not entitled to judicial deference.  Furthermore, as the Supreme Court has observed, "where, as here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute." *Christopher v. SmithKline Beecham Corp.*, __ U.S. __, 132 S. Ct. 2156, 2168 (2012).  This Court should not permit the EEOC to use litigation and other extra-regulatory means to expand employer obligations under the ADA and other EEO laws – a recent practice that has come under intense criticism and scrutiny by Congress.  *See* Press Release, U.S. Senate Comm. on Health, Educ., Labor, & Pensions, *Alexander to EEOC: Agency with Critical Task Has Gotten Far Afield of Mission* (May 19, 2015).

---

[10] The EEOC also has not published any new, sub-regulatory enforcement guidance undercutting or raising doubt regarding its previous interpretations or the near-uniform treatment of obesity by the courts.

Appellate Case: 14-3858     Page: 39     Date Filed: 06/01/2015 Entry ID: 4280759

# CONCLUSION

For all of the foregoing reasons, the Equal Employment Advisory Council, Chamber of Commerce of the United States of America, and NFIB Small Business Legal Center respectfully urge the Court to affirm the district's court's decision below.

Respectfully submitted,

*s/ Rae T. Vann*

Kathryn Comerford Todd
Warren Postman
U.S. CHAMBER
LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Attorneys for *Amicus Curiae*
Chamber of Commerce of the
United States of America

Karen R. Harned
Elizabeth Milito
NATIONAL FEDERATION OF
   INDEPENDENT BUSINESS
SMALL BUSINESS LEGAL CENTER
1201 F Street, N.W.
Washington, DC 20004
(202) 406-4443

Attorneys for *Amicus Curiae*
National Federation of
Independent Business
Small Business Legal Center

May 22, 2015

Rae T. Vann
*Counsel of Record*
NORRIS, TYSSE, LAMPLEY
& LAKIS, LLP
1501 M Street, N.W., Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amicus Curiae*
Equal Employment Advisory Council

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that the BRIEF *AMICI CURIAE* OF THE EQUAL

EMPLOYMENT ADVISORY COUNCIL, CHAMBER OF COMMERCE OF

THE UNITED STATES OF AMERICA AND NATIONAL FEDERATION OF

INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER IN

SUPPORT OF DEFENDANT-APPELLEE AND IN SUPPORT OF

AFFIRMANCE complies with Fed. R. App. P. 32(a)(7)(B) and pertinent

provisions of Eighth Circuit Rule 28A.  The brief contains 6,821 words,

from the Interest of the *Amici Curiae* through the Conclusion, according to the

word processing program Microsoft Word 2007.

Kathryn Comerford Todd
Warren Postman
U.S. CHAMBER
LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Attorneys for *Amicus Curiae*
Chamber of Commerce of the
United States of America

*s/ Rae T. Vann*
Rae T. Vann
*Counsel of Record*
NORRIS, TYSSE, LAMPLEY
& LAKIS, LLP
1501 M Street, N.W., Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amicus Curiae*
Equal Employment Advisory Council

Karen R. Harned
Elizabeth Milito
NATIONAL FEDERATION OF
  INDEPENDENT BUSINESS
SMALL BUSINESS LEGAL CENTER
1201 F Street, N.W.
Washington, DC 20004
(202) 406-4443

Attorneys for *Amicus Curiae*
National Federation of
Independent Business
Small Business Legal Center

May 22, 2015

# CERTIFICATES OF SERVICE
# FOR DOCUMENTS FILED USING CM/ECF

### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/_____