No. 14-3858

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

MELVIN A. MORRISS, III,

Plaintiff – Appellant

v.

BNSF RAILWAY COMPANY, A Delaware Corporation,

Defendant - Appellee
_____

REPLY BRIEF OF APPELLANT
_____

Ari D. Riekes, #23096
MARKS CLARE & RICHARDS, L.L.C.
11605 Miracle Hills Drive, Suite 300
Omaha, NE 68154-8005
(402) 492-9800
fax: (402) 492-9336
E-mail: ariekes@mcrlawyers.com
-and-
Jennifer Turco Meyer, #23760
DYER LAW, P.C., L.L.O.
10730 Pacific Street, Suite 111
Omaha, NE 68114
(402) 393-7529
fax: (402) 391-2289
E-mail: jennifer@dyerlaw.com
*COUNSEL FOR PLAINTIFF/APPELLANT*

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Authorities .............................................................. ii

Argument .................................................................................. 1

Conclusion ............................................................................... 31

Certificate of Compliance ..................................................... 33

Certificate of Service ............................................................ 34

Appellate Case: 14-3858    Page: 2    Date Filed: 06/09/2015 Entry ID: 4283616

# TABLE OF AUTHORITIES

**CASES:**

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827 (10th Cir. 2011) ...................... 8

*Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d

    540 (1998)………………….................................................. 25

*BNSF Ry. Co. v. Feit*, 365 Mont. 359 (Mont. 2012).................................... 14

*Culpepper v. Schafer,* 548 F.3d 1119 (8th Cir. 2008) ................................ 18

*Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, and*

    *Hospitals*, 10 F.3d 17, 24 (1st Cir. 1993) .............. 9, 10, 11, 12, 13, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........ 26

*Eaton v. Marion Cnty. Fair Ass'n*, 172 F. Supp. 2d 1184

    (S.D. Iowa 2001)................................................................. 23

*E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268

    (M.D. Fla. 2014) ................................................................. 4

*EEOC v. Res. for Human Dev., Inc.*, 2011 U.S. Dist. LEXIS 140678

    (E.D. La. 2011) ................................................................. 14

*Equal Employment Opportunity Comm'n v. Staffmark Inv. LLC*,

    No. 12 CV 9628, 2014 WL 4376149 (N.D. Ill. Sept. 4, 2014) ........... 8

*E.E.O.C. v. Texas Bus Lines*, 923 F. Supp. 965 (S.D. Tex. 1996)............... 14

ii

*E.E.O.C. v. Watkins Motor Lines, Inc.*, 563 F.3d 436 (6th Cir. 2007)……. 2, 3

.............................................................................. 4, 6, 8, 13

*First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616,

(8th Cir. 2007) .............................................................. 23, 28

*Francis v. City of Meriden*, 129 F. 3d 281 (2d Cir. 1997).................... 5, 6, 13

*Gaus v. Norfolk S. Ry. Co.,* No. CIV.A. 09-1698, 2011 WL 4527359

(W.D. Pa. Sept. 28, 2011)..................................................... 1, 7, 24, 27

*Hohn v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 72297

(D. Neb. Sept. 26, 2007) ..................................................... 24

*Indergard v. Georgia-Pacific Corp*., 582 F.3d 1049

(9th Cir. 2009) .............................................................. 24

*McGhee v. Pottawattamie County, Iowa*, 547 F.3d 922

(8th Cir. 2008)……………………………………………………….....20

*Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446 (11th Cir. 1996) .................... 24

*Powell v. Gentiva Health Servs., Inc*., No. CIV.A. 13-0007-WS-C, 2014

WL 554155 (S.D. Ala. Feb. 12, 2014) ........................................... 9, 14

*Residential Funding Co., LLC v. Terrace Mortgage Co*., 725 F.3d 910

(8th Cir. 2013) .............................................................. 22, 23

*Sibilla v. Follett Corp*., 2012 WL 1077655 (E.D.N.Y. Mar. 30, 2012) ....... 14

iii

**STATUTES:**

42 U.S.C. § 12113(b) .................................................................. 24

42 U.S.C.S. § 12102(3)(B) ........................................................... 29

42 U.S.C.S. § 12102(4)(A). ........................................................... 7

**OTHER:**

29 C.F.R. § 1630.1(c) ..................................................................... 8

29 C.F.R. § 1630.15 ................................................................. 29, 30

29 C.F.R. §1630.2(h) App. ....................................................... 8, 12

29 C.F.R. §1630.2(h)(1) ................................................................ 21

Oxford English Dictionary Online. 2015 ..................................... 16

Merriam-Webster Online. 2015 ..................................................... 16

Appellate Case: 14-3858    Page: 5    Date Filed: 06/09/2015 Entry ID: 4283616

**ARGUMENT**

## I.   MORRISS WAS REGARDED AS DISABLED AS BNSF PERCEIVED HIM TO HAVE A PHYSICAL IMPAIRMENT.

To prove his regarded as claim, Morriss is not required to prove an actual impairment, so long as BNSF perceived Morris as impaired.  Notwithstanding the arguments of BNSF and its amici, the ADAAA dramatically broadened the definition of disability:

> In keeping with its intent to construe the definition of disability in favor of broad coverage, Congress amended the definition of disability . . . as follows: (1) Disability . . . means, with respect to an individual . . .(C) being regarded as having such an impairment  . . . if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical . . . impairment . . .

*Gaus v. Norfolk S. Ry. Co.,* No. CIV.A. 09-1698, 2011 WL 4527359, at *16 (W.D. Pa. Sept. 28, 2011).  Even if this Court finds that extreme obesity not the result of a physiological disorder is not an actual impairment, such does not preclude Morriss from being successful on the basis of perceived impairment.

1

**A. The District Court erred in its reliance on *Watkins* and other pre-ADAAA cases.**

A review of the District Court's Order, reveals that it only considered whether Morriss's extreme obesity was an actual impairment. BNSF's defense against Morriss's Complaint similarly focuses in on the narrow issue of actual impairment. The District Court and BNSF gloss over any meaningful analysis as to whether BNSF perceived Morriss as impaired. Indeed, Morriss's "regarded as" claim survives so long as BNSF merely perceived Morriss as impaired.

     *1. Watkins and similar pre-ADAAA rulings are distinguishable.*

The District Court and BNSF rely extensively on *Equal Employment Opportunity Commission v. Watkins Motor Lines, Inc.*, 563 F.3d 436 (6th Cir. 2007). The District Court's and BNSF's reliance is misguided as *Watkins* improperly found that morbid obesity is not an actual impairment. In focusing on *Watkins*, both the District Court and BNSF fail to address the abundant facts which show that BNSF perceived Morriss as being impaired.

While *Watkins* was decided as a regarded as claim, the matter was decided solely on the basis of actual impairment. Moreover, the facts are highly distinguishable. In *Watkins*, the employee was refused to return to work after a work injury. 463 F.3d at 438-39. Thereafter, the employee's personal physician failed to provide the employer with certain requested medical information, and the

2

employee was ultimately sent to an industrial clinic doctor. *Id*. at 439. The industrial clinic doctor observed the employee as having limited range of motion, shortness of breath and weighing 405 pounds. *Id*. Upon these observations, the doctor concluded the employee could not perform his job safely. *Id*.

In *Watkins*, there was no direct evidence that the employer refused to allow the employee to return to work due to his morbid obesity. However, with respect to Morriss, BNSF expressly linked its employment decision to Morriss's extreme obesity, and expressly linked said obesity to Morriss's overall present health and present medical condition.

Morriss respectfully disagrees with *Watkins's* finding that morbid obesity is never an impairment unless it is a result of a physiological disorder. A careful reading of *Watkins* reveals that the court's sole focus was "whether non-physiologically caused morbid obesity is an ADA impairment." *Id*. at 440. Morriss explained that his extreme obesity clearly meets the definition of impairment in light of the physiological effects the medical condition has on one's body systems. Morriss Brief 21-26. Morriss further explained how his extreme obesity satisfied the plain language of impairment as defined by the EEOC's regulations. Id. 22-26. By virtue of being extremely obese, Morriss's weight was certainly not normal, and Morriss's morbid obesity placed him within range of being over 100% above the norm. Id. 26-32.

3

Notwithstanding whether extreme obesity is in fact an actual impairment absent an underlying physiological disorder, *Watkins* failed to address whether the employer *perceived* the employee as impaired. *Watkins* failed to discuss a fact pattern that could sufficiently create a reasonable inference that the employer "perceived" morbid obesity as an impairment. Such is crucial as, "**[t]he relevant inquiry in such cases is not the plaintiff's actual condition, but how the Defendant "perceived [his] condition, including the reactions and perceptions of the persons interacting with or working with him.**" *E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1275 (M.D. Fla. 2014) (citations omitted) (emphasis added).

In *Watkins*, there is no analysis of the employer's perception of the employee's obesity. *Watkins* did not consider whether the shortness of breath and mobility was perceived by the employer to be related to the employee's obesity. No facts in *Watkins* indicated that the employer believed the employee was at risk of suffering from other conditions due to his obesity. Finally, the employer did not label the employee with any degree of obesity. The rationale used by *Watkins* is much like the rationale of the District Court. Because it believed Morriss's extreme obesity was not the result of a physiological disorder, the District Court concluded that BNSF could not have perceived Morriss as having an impairment. Short of proving an actual physiological cause to one's obesity, *Watkins*, the

4

District Court and BNSF fail to address any fact pattern upon which an employer may be deemed to have perceived obesity as being caused by a physiological disorder. It is unrealistic to expect an employer to say, "because XYZ physiological disorder is causing your obesity, we decline to hire you." However, in this action, there certainly are enough facts to show that Morriss was perceived as having an impairment, or at a minimum, there is a jury question as to such issue. After all, BNSF labeled Morriss as being extremely obese and informed him that he was a current health risk.

BNSF's reliance on *Francis v. City of Meriden*, 129 F.3d 281 (2nd Cir. 1997) is similarly misplaced. *Francis* concerned an employee firefighter who failed to meet the maximum weight limit allowed by the city employer pursuant to a collective bargaining agreement. 129 F.3d at 282. The employee claimed he was discriminated against due to obesity. *Id*. However, *Francis* has no discussion regarding the degree of the employee's obesity (e.g. obese, moderately obese, or extremely obese). Also, *Francis* was decided prior to the ADAAA and there are no facts indicating the employer perceived the employee as suffering from an impairment. In fact, the opposite is true. The *Francis* employee had an option to complete an alternative fitness test, which the employee refused. *Id*. Such undercuts any notion that the employer perceived the firefighter from being impaired. Moreover, unlike in this matter, the employer made no pronouncement

5

that it believed the employee was a current health risk and/or was highly susceptible to sudden incapacitation. *Francis* is simply devoid of facts relating to any perception of the employer.

By limiting the issue to actual impairment, the District Court's and BNSF's analysis is completely circular and can be summed up as follows: unless Morriss's extreme obesity is an actual impairment, BNSF could not have perceived Morriss as having an impairment. Such a narrow construction was never intended with respect to a regarded as disabled claim. As previously discussed, and as argued below, such an analysis is antithetical to the current law.

   2. *The ADAAA broadened the scope of the ADA with respect to regarded as*
      *claims.*

In failing to address perceived impairment, the District Court's and BNSF's reliance on *Watkins* is further misplaced as *Watkins* was decided prior to the ADAAA. While BNSF wishes to lure this Court to narrowly define the issue of impairment, thereby deflecting from its conduct, it ignores how the ADAAA dramatically redefined the meaning of disability in favor of broad coverage.

   In enacting the ADAAA, Congress rejected the narrow interpretation

   of disability adopted by the Supreme Court  . . .  finding that [its]

   standard "has created an inappropriately high level of limitation

   necessary to obtain coverage under the ADA,"  . . . Congress further

Appellate Case: 14-3858     Page: 11     Date Filed: 06/09/2015 Entry ID: 4283616

declared that the purpose of the ADAAA is to convey its intent "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]" *Id.* at § 2(b)(5), 122 Stat. at 3554.

*Gaus*, 2011 WL 4527359, at *16.

As Morriss argued previously:

Congress passed the ADAAA with the explicit purpose of rejecting certain standards and reasoning of Supreme Court opinions regarding interpretation of the ADA[7] and "reinstating a broad scope of protection to be available under the ADA." Pub.L. No. 110–325 § 2(b)(1), 122 Stat. 3553–3554 (2008). Accordingly, the ADAAA added language to the ADA providing for a broad construction of the definition of disability. *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."). This new language became effective on January 1, 2009, before the relevant events in this case. *See* Pub.L. No. 110–325, § 8, 122 Stat. 3559.

Appellate Case: 14-3858     Page: 12     Date Filed: 06/09/2015 Entry ID: 4283616

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 834 (10th Cir. 2011).

As articulated by another court:

The ADAAA was amended in 2008 to "make it easier for people with disabilities to obtain protection under the ADA" and turn the focus to "whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4). The amended ADAAA redefines "disability" to provide expansive coverage to the maximum extent permitted by the terms of the ADA. *Id*. Under the ADAAA, an individual an . . . can demonstrate that she was subjected to a prohibited adverse employment action because she was "regarded as" having an actual or perceived physical or mental impairment . . .

*Equal Employment Opportunity Comm'n v. Staffmark Inv. LLC*, No. 12 CV 9628, 2014 WL 4376149, at *6 (N.D. Ill. Sept. 4, 2014).

*Watkins*, the District Court and BNSF fail to discuss any fact pattern that could establish a perceived impairment regarded as claim in favor of broad coverage. However, case law after passage of the ADAAA indicates that such threshold should be minimal. *See Staffmark Inv. LLC*, 2014 WL 4376149, at *6 (referencing 29 C.F.R. Pt. § 1630.2, App.) (analyzing facts in which an employer perceives an impairment and stating, "[a]n employer that believes an employee is

8

unable to perform the job safely or that an employee's impairment is insufficiently controlled regards that employee as disabled."). Even in a case where the trial court found that an employee's obesity claim failed, the court recognized the very low threshold that is required with respect to a perceived disability claim. See *Powell v. Gentiva Health Servs., Inc*., No. CIV.A. 13-0007-WS-C, 2014 WL 554155, at *8 (S.D. Ala. Feb. 12, 2014), *appeal dismissed* (May 19, 2014) (discussing that to be regarded as being impaired on the basis of weight is not an overly burdensome task and stating: "Of course, weight can be a physical impairment or, more precisely, an employer may *perceive* an employee's overweight status to constitute a physical impairment. For example, suppose an employer believes that an overweight job applicant cannot climb a ladder, or walk across a parking lot, or climb flights of stairs, and therefore does not hire the overweight individual for a job that requires such activities. That might give rise to 'regarded-as' status for an ADA claim in the post-ADAAA world.").

Interestingly*, Cook v. State of R.I.*, 10 F.3d 17 (1st Cir. 1994), a case wrongly construed by BNSF, even without need of the recent amendments, illustrates that BNSF, as a matter of law, perceived Morris as being impaired. Morriss respectfully disagrees with BNSF that *Cook* stands for the proposition that obesity must be caused by a physiological disorder in order for an actual or perceived impairment to exist. Although pre-dating the ADAAA, *Cook* is

9

consistent with the broad definition of disability under the ADAAA and demonstrates the type of evidence by which an employer can perceive an employee to suffer from an impairment. In *Cook*, the jury instruction provided, "that a condition or disorder is not an impairment unless it . . . constitutes an immutable condition that the person affected is powerless to control." *Id*. at 23-4. The First Circuit found the jury had sufficient information to believe that the employee's morbid obesity was due to a physiological disorder. *Id*. at 24. Notably, however, the court did not limit its regarded as analysis only to whether a physiological condition was in fact the cause of the employee's obesity. Rather, it stated:

> Even if immutability were normally a prerequisite to finding a covered impairment, . . . the logic of a perceived disability case, as embodied in the regulations, *see* 45 C.F.R. § 84.3(j)(2)(iv)(C), would nonetheless defeat the doctrine's application. So long as the prospective employer responds to a perceived disability in a way that makes clear that the employer regards the condition as immutable, no more is exigible.

*Id*. Prior to said explanation, the court also noted:

> . . . The jury could have found that plaintiff, although not handicapped, was treated by [the employer] as if she had a physical impairment. Indeed, [the employer]'s stated reasons for its refusal to

10

hire—its concern that Cook's limited mobility impeded her ability to evacuate patients in case of an emergency, **and its fear that her condition augured a heightened risk of heart disease, thereby increasing the likelihood of workers' compensation claims—show conclusively that [the employer] treated plaintiff's obesity as if it actually affected her musculoskeletal and cardiovascular systems.**

*Id*. at 23 (emphasis added).

*Cook* clearly understood that merely by looking at an employee, one may not know whether or not the obesity is the result of a physiological disorder. However, once the employer's justification for not hiring an employee is based on an inability to do the job and/or heightened risk of disease, such justifications conclusively create a present perception of impairment. Indeed, the same health and safety risks which the employer in *Cook* acted upon in basing its decision to not hire the employee, are strikingly similar to the rational used by BNSF. The decision maker who denied employment to the plaintiff in *Cook*, like Dr. Jarrard, noted the impact that morbid obesity has on the body system, including the cardiovascular, immune, musculoskeletal, and sensory systems. *Id*. at 23 n 6.

Like the employer in *Cook*, BNSF tied its employment decision to Morriss's extreme obesity. BNSF unequivocally determined that Morriss's extreme obesity prevented him from performing his job safely. Also, BNSF's decision was not

11

based solely on future risk, but on Morriss's present risk as well. His notification letter states as much. BNSF told Morriss he was, "[n]ot **currently** qualified for the safety sensitive mechanist position due to significant **health** and **safety risks associated with Class 3 obesity** (Body Mass Index of 40 or greater)." (APP 411 and 528) (emphasis added). As later learned, those risks included a fear that Morriss was then at risk for suffering from sudden incapacitation due to: sleep apnea, cardiovascular disease, hypertension, stroke, coronary artery disease, heart attacks, diabetes, etc. (APP 155-58, 829, 905, 1157).

Not only does *Cook* definitively hold BNSF's conduct was in violation of the ADA, but, as discussed above, it speaks to the ADA's prohibition of basing employment decisions on speculative risk. BNSF has not provided one single case to support its theory that an employer can escape liability by basing a present employment decision on a fear or presumption that an employee is likely to suffer from other impairments like diabetes, sleep apnea, heart disease, etc. in the very near future. Rather, BNSF wishes to engage this Court in an argument over the EEOC's Interpretive Guidance which states: "the definition [of impairment], likewise, does not include characteristic predisposition to illness or disease." 29 C.F.R. § 1630.2(h) App. However, as argued by Morriss in his Appellate Brief, the District Court's and BNSF's interpretation of said regulation is both misguided and contrary to the purpose of the ADA. Further, BNSF has failed to provide any

12

logical reason as to why the law would treat differently the employer who wrongly assumes an employee has diabetes, from the employer who based its decision on a belief that said employee is likely to suffer from diabetes. In either instance, the employee does not suffer from diabetes, and the employer's intent is to discriminate on the basis of diabetes. Such distinction becomes even less material when the lens is to be viewed in favor of broad coverage, without extensive analysis, and with the focus on whether the employer has complied with its obligations.

Regardless, BNSF cannot have its cake and eat it too. It cannot argue that it did not perceive Morriss's obesity as an impairment and yet deny him employment on the basis that he was a current health and safety risk. Undoubtedly, BNSF had to perceive Morriss as having a condition that affected his body systems, otherwise, its justification for not employing him is meaningless. As *Cook* notably addressed, acting on a "fear that [plaintiff's morbid obesity] augured a heightened risk of heart disease . . . show[s] conclusively that [the employer] treated plaintiff's obesity as if it actually affected her musculoskeletal and cardiovascular systems." *Cook*, 10 F.3d at 23.

Consequently, in light of the fact that *Watkins* and *Francis* were decided prior to the enactment of the ADAAA, and that *Cook* is largely consistent with the intent and purpose of the ADAAA, there is no risk that this Court will create a split

13

amongst the circuits. Moreover, BNSF's assertion that the law is well settled on the issue of obesity as an impairment, actual or perceived, is purely mistaken. Not only does it misconstrue *Cook*, as noted above, it simply dismisses such cases as *EEOC v. Texas Bus Line*, 923 F. Supp. 965 979 (S.D. Tex. 1996) and post-ADAAA cases such as *EEOC v. Res. for Human Dev., Inc*., 2011 U.S. Dist. LEXIS 140678 (E.D. La. Dec. 6, 2011) and *BNSF Ry. Co. v. Feit*, 365 Mont. 359 (Mont. 2012). Also, cases such as *Powell*, 2014 WL 554155, and *Sibilla v. Follett Corp*., 2012 WL 1077655 (E.D.N.Y. Mar. 30, 2012) are completely non-instructive, especially with respect to a perceived impairment claim. Neither case had any evidence that the employees' obesity was a consideration in any of the decisions of the employers. Therefore, this Court has an opportunity to rule consistently with the First Circuit and to uphold the broad purpose and intent of the ADAAA with respect to regarded as claims under the ADA.

## II. THE DISTRICT COURT ERRED BY FINDING MORRISS'S OBESITY IS NOT AN ACTUAL IMPAIRMENT.

For Morriss to prove that BNSF regarded him as having an actual impairment, Morriss must establish that his morbid obesity is a physical impairment. If Morriss proves his morbid obesity is a physiological disorder affecting one or more of his body systems, he satisfies this burden. There is no requirement under the ADAAA that Morriss prove his physiological disorder is

14

caused by another physiological disorder. In this regard, BNSF's interpretation of the ADAAA is infinitely regressive, and should not be adopted by this Court. Moreover, BNSF's interpretation is categorically contradictory. How can Morriss's extreme obesity be so benign that it does not constitute a physiological disorder, yet at the same time be so damaging that it presently puts him at such extreme risk?

## A. Morriss's morbid obesity is an impairment because it is a physiological disorder.

Morriss and his amici have presented overwhelming evidence that Morriss's extreme obesity is, in and of itself, a physical impairment because morbid obesity is a physiological disorder that affects one or more body systems. Morriss Brief 21-23; AARP Brief 4-12. BNSF argues that morbid obesity should not be considered a disease because it is "lifestyle related." BNSF Brief 18. However, there is no support for the proposition that Morriss's extreme obesity is related to his lifestyle. More importantly, the medical literature Dr. Jarrard relied on for his opinions unequivocally supports the conclusion that morbid obesity is not only a disease, but also a physiological disorder of the human body. Morriss Brief 23-25. The very definition of a disease is "a disorder of structure or function in a human ...

15

that produces specific signs or symptoms … and is not simply a direct result of physical injury."[1]

BNSF seeks to use the words "weight", "BMI" and "obesity" synonymously, hoping to further confuse the issue of whether morbid obesity is a physical characteristic. Specifically, BNSF characterizes obesity as "excess weight" and casually defines, without any citation, obesity to be "simply a reference to weight at certain levels." BNSF Brief 2, 27. This characterization is not supported by BNSF's medical evidence or even common definitions of the terms. By definition, BMI and obesity are both something more than just a measurement of a person's weight. "Body Mass Index" is a weight-to-height ratio, calculated by dividing one's weight in kilograms by the square of one's height in meters and used as an indicator of obesity.[2] (APP 1296). Obesity is defined as "a condition characterized by the excessive accumulation and storage of fat in the body."[3] Being diagnosed as morbidly obese doesn't "simply" mean that you weigh too much. It means that your body has such an excessive accumulation and storage

---

[1] Oxford English Dictionary Online. 2015.
http://www.oxforddictionaries.com/us/definition/american_english/disease (4 June. 2015).

[2] Oxford English Dictionary Online. 2015.
http://www.oxforddictionaries.com/us/definition/american_english/body-mass-index?q=body+mass+index (4 June. 2015).

[3] Merriam-Webster Online. 2015.
http://www.merriam-webster.com/dictionary/obesity (4 June. 2015).

16

of fat that it is effecting your body's normal functioning. For BNSF to deny this proposition would mean it would also have to deny the science behind its assessment of Morriss's risk for other serious health conditions.

BNSF was very clear in its rejection letter to Morriss, that he was not currently qualified for the diesel mechanic position based on his BMI and classification as morbidly obese--not simply because he looked too fat or weighed too much. Also, BNSF did not base its decision on stereotypical perceptions of fat people being lazy, unproductive, and hurting morale. Rather, it attributed to Morriss a designation of extreme obesity, a medical condition, and made employment decisions on that basis. The Court should decline BNSF's invitation to ignore the distinction between "weight", "body mass index" and "obesity."

**B. Morriss's morbid obesity is not a physical characteristic.**

There is no need for the Court to undertake an analysis of whether morbid obesity is a physical characteristic because Morriss has proven that his morbid obesity, on its own, is a physiological disorder. If the Court decides to undertake an analysis of whether morbid obesity is a physical characteristic, the evidence before the Court confirms that morbid obesity does not meet the definition of a physical characteristic. The District Court ignored the plain language of the Interpretive Guidance and stated that its interpretation "makes more sense" without further explanation. BNSF also overstates its position that all courts have followed

17

its interpretation, blatantly ignoring the three more recent cases that Morriss cites finding no requirement to prove a physiological cause in obesity cases. Morriss's Brief 25, 26. Not to mention that the District Court and BNSF's interpretation is in contravention of the EEOC's interpretation of its own regulations and Interpretive Guidance, which should be given deference in this case. EEOC Brief 19, 20; *Culpepper v. Schafer*, 548 F.3d 1119, 1122 (8th Cir. 2008).

While both parties argue that their reading of the EEOC's Interpretive Guidance relies on plain meaning, Morriss's interpretation is the most logical. Simply put, the Interpretive Guidance requires two conditions to be met for weight to be considered a physical characteristic: weight within normal range "and" not caused by physiological disorder. The word "and" is used to express that both conditions must be met. It logically follows that when either one of those two conditions is absent, weight is not considered to be a physical characteristic. The fact that Morriss's morbid obesity falls outside the normal range confirms his morbid obesity cannot meet the definition of a physical characteristic.

BNSF's concession that morbid obesity can constitute impairment in cases where it is caused by another physiological disorder proves the absurdity of its interpretation. There is no difference in the impairment status of a person who has morbid obesity because of their lifestyle and a person who has morbid obesity caused by a thyroid disease. Just like there is no difference in the impairment status

18

of a person who developed diabetes because of their lifestyle and a person who was born with diabetes. Each person's diabetes would be considered an impairment by virtue of the condition they have, and not the cause of the condition. Likewise, each person with morbid obesity suffers from the same impairment, the only difference being the cause of the disease. Under BNSF's interpretation, the law would unfairly treat two people who are suffering from the same disorder differently. So long as morbid obesity can be an impairment, there is no basis for requiring a determination as to the cause of the condition.

### C. Morriss's evidence created a genuine issue of material fact that his morbid obesity was outside the "normal range."

Before the District Court, Morriss presented substantial evidence that his extreme obesity was outside the "normal range." Morriss Brief 31, 32. Moreover, BNSF's medical evidence stated that Morriss was "extremely" or "severely" obese and its categorization of Morriss as too obese to be employed by BNSF undoubtedly supports Morriss's claim. Id. While these facts are uncontroverted by BNSF, at the very least, Morriss's evidence created a genuine issue of material fact as to whether Morriss's morbid obesity was outside the "normal range."

BNSF tries desperately to distance itself from its own evidence favoring Morriss (NHLBI's Practical Guide) by citing "publicly available data" on weight from the CDC. BNSF Brief 54. It is impossible to evaluate whether Morriss's

19

weight is within normal range by using Table 6 as BNSF suggests. The data shows weight as it relates to the surveyed individuals age and has no reference to the height of the surveyed individuals. Additionally, the CDC's table could be interpreted to show that Morriss's weight was clearly outside the norm, being that he was over the 95th percentile in weight for his age group.

The Court should not entertain BNSF's argument that any discussion regarding whether Morriss's morbid obesity exceeds 100% the normal weight or whether his obesity is outside the normal range has been waived. BNSF Brief 10, 53-4. Discussions related to such issues were not raised for the first time on appeal. Morriss consistently argued he was perceived by BNSF as having an impairment tied to his extreme obesity. BNSF argued in its opposition brief that the Interpretive Guidance does not support Morriss's obesity as an impairment, actual or perceived. In Reply, Morriss pointed out BNSF's improper interpretation of the Interpretive Guidance and how other courts construed the meaning of impairment using the 100% above the norm standard. As such, Morriss's discussion of various interpretations of impairment is distinguished from the absolute immunity defense first raised by the defendants in *McGhee v. Pottawattamie County, Iowa*, 547 F.3d 922, 929 (8th Cir. 2008), and BNSF has not suffered any prejudice. Finally, the District Court dismissed BNSF's Motion to Strike Morriss's Reply Brief which was based on the same waiver argument. (APP

20

1781, 1787).  As such, BNSF could have appealed the District Court's decision, but declined to do so.  Consequently, BNSF has waived this argument.

## D. Coverage under the ADAAA will not change by reversing the District Court's decision.

BNSF and its amici argue that finding in favor of Morriss, will open the floodgates and that people could bring ADA claims based on any physical characteristic. A reversal of summary judgment will not eliminate the requirements of 29 C.F.R. § 1630.2(h)(1) or the Interpretive Guidance so that all physical characteristics will be transformed into possible impairments as feared by BNSF and its amici.  The Interpretive Guidance makes clear that such traits as eye color, hair color and left-handedness are purely and at all times physical characteristics. It also makes clear that conditions that are normal to the body, like pregnancy, do not meet the definition of impairment. A decision in favor of Morriss in this singular case will not change the law with respect to all other cases.

Also, it is not the duty of this Court to decide what would constitute weight within normal range in every case. However, when an individual is extremely obese, such person's weight is inherently not "normal" under any reasonable definition. Regardless, when the issue of a perceived impairment is at play, it is not the Court's perception of abnormality that controls, but rather the employer's perception.   BNSF believed Morriss's obesity to be abnormal and BNSF

21

distinguishes between different severities of obesity. Clearly, BNSF determined that extreme obesity, in most circumstances, is not tolerable for certain jobs.

Finally, it would be utterly improper to rule that a condition is not an impairment simply because many employers may be impacted. Under such logic, the entire ADAAA would be held meaningless as Congress passed the legislation to expand coverage. Moreover, to the degree that extreme obesity is an actual impairment, when pursuing an action under the disability and record of disability prongs, employees must still prove that their obesity substantially limits a major life activity and a reasonable accommodation exists. Like any other disability claim, employers will still have available any and all affirmative defenses. However, as intended by Congress, the focus should remain on whether employers have complied with their obligations.

## III. THE COURT SHOULD NOT AFFIRM THE DISTRICT COURT'S DISMISSAL BASED ON ANY OF BNSF'S AFFIRMATIVE DEFENSES.

BNSF and its amici argue for affirming the District Court's decision based on affirmative defenses that were not considered on summary judgment. In moving for summary judgment on its affirmative defenses, BNSF must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Residential Funding Co. v. Terrace Mortgage Co.*, 850 F. Supp. 2d 961, 964

22

(D. Minn. 2012) *aff'd* sub nom. *Residential Funding Co., LLC v. Terrace Mortgage Co.*, 725 F.3d 910 (8th Cir. 2013). BNSF "must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard" to them. *Eaton v. Marion Cnty. Fair Ass'n*, 172 F. Supp. 2d 1184, 1187 (S.D. Iowa 2001). "Once the movant meets the appropriate burden, the nonmovant must expressly set forth 'specific facts showing that there is a genuine issue for trial.' " *Id.* BNSF not only failed to meets it burden to adduce evidence to support each element of its affirmative defenses, Morriss's evidence demonstrated genuine issues of material fact sufficient to warrant denial of summary judgment.

## A. BNSF failed to prove that its qualification standard is a permissible business necessity.

BNSF only asks this Court to affirm the District Court's decision on the basis of one of its affirmative defenses: business necessity. BNSF Brief 65. As an affirmative defense, BNSF was required to raise its business necessity claim in its responsive pleading under Fed. R. Civ. P. 8(c). See *First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*. 477 F.3d 616, 622 (8th Cir. 2007). BNSF's Answer did not contain any claim that BNSF's discriminatory practice was justified by business necessity. (APP 17-19). BNSF's failure to plead its business necessity defense in its Answer should have resulted in a waiver of that defense on summary judgment, and should result in a waiver of that defense now on appeal.

23

Under the ADAAA, the burden of proving business necessity "'is quite high, and is not to be confused with mere expediency.'" *Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049, 1057 (9th Cir. 2009) (citations omitted).  If an employer meets its burden of showing that the qualification standard is job-related and consistent with business necessity, the burden then shifts to the employee to show that a reasonable accommodation exists that would satisfy the qualification standard. *Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996).

Because BNSF argues that its qualification standard of not hiring applicants with a BMI of 40 or above is necessitated by its concern for employee safety, the analysis of whether BNSF has carried its burden to prove a business necessity defense is essentially the same as a "direct threat" analysis.  An employer's qualification standards may include "a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b); *Hohn v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 72297, at **13-15 (D. Neb. Sept. 26, 2007).  As the court in *Gaus* noted:

> The Third Circuit Court of Appeals has set forth the applicable standard to determine whether an employer may invoke the business necessity defense when using safety as its qualification standard:
>
> [A] factfinder must face the same concerns that the Supreme Court addressed in *Arline* about the nature of the risk, the duration of the

Appellate Case: 14-3858     Page: 29     Date Filed: 06/09/2015 Entry ID: 4283616

risk, the severity of the risk, and the probabilities that the disability will cause harm. See *Arline*, 480 U.S. at 287, 107 S.Ct. 1123. For a safety qualification to meet the business necessity defense, it must be based on current medical knowledge about the disability and on the real risks that the disability may present. Any jury considering this defense [94] should be instructed not to base its determination on unfounded fears, but only on medically accurate facts. Even an employer's good faith actions will not save him if the employer is misinformed about the realities of the disability. In such a case, the jury should "assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments." *Bragdon v. Abbott*, 524 U.S. 624, 650, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

2011 WL 4527359, at *30 (citations omitted). Morriss disputed BNSF's direct threat affirmative defense in opposition to BNSF's motion for summary judgment. Morriss argued BNSF, as a matter of law, failed to carry its burden as it did not conduct an individualized assessment of him and thus could not conclude that he was a "direct threat" in any respect. (APP 1692-1706).

BNSF's claims also fail because BNSF provides no credible evidence of a real safety risk posed by the condition of morbid obesity. In support of its defense,

25

BNSF relies extensively on inadmissible expert opinions and testimony from Dr. Jarrard. BNSF Brief 67-68. In the lower court, Morriss also filed a Motion to Exclude several of Dr. Jarrard's opinions related to BNSF's "direct threat" and "business necessity" defenses. (APP 1788). The basis for Morriss's motion to exclude Dr. Jarrard's testimony was that his opinions on safety and sudden incapacitation did not meet that standards required by Federal Rules of Evidence 703, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. (APP 1788 -1791; 21795-1808). The District Court never reached a decision on Morriss's Motion to Exclude. The admissibility of Dr. Jarrard's opinions on safety and sudden incapacitation should be decided prior to this Court considering whether the District Court's decision should be affirmed on the basis of business necessity.

BNSF's argument relies exclusively on Dr. Jarrard's unsupported opinion that employees with morbid obesity are at extremely high risk for sudden incapacitation. Dr. Jarrard could only cite studies that discuss how obesity places individuals at a greater risk of developing secondary diseases, and not any studies or reports confirming morbidly obese individuals are at greater risk for sudden incapacitation. (APP 1171-2). Even if this Court decides that Dr. Jarrard's testimony on the issue of safety and sudden incapacitation is admissible, his

Appellate Case: 14-3858    Page: 31    Date Filed: 06/09/2015 Entry ID: 4283616

credibility as an expert and the weight of his testimony on this issue should be determined by a jury at trial.

Furthermore, BNSF admits that prior to implementation of its qualification standard related to BMI in 2002, it had no statistical data on how many individuals it employed with BMIs over 40 and that no statistical data was used to influence the implementation of its policy. (APP 1149, 1163-4). In 2002, BNSF implemented its qualification standard related to BMI in response to medical literature from the National Heart Lung Institutes showing the increased likelihood of obese people developing future diseases compared to the non-obese population. Not because of any specific safety issues that occurred prior to 2002. Id. Moreover, the fact that BNSF does not apply this qualification standard in Montana, albeit under administrative and judicial order, severely undercuts BNSF's claims that its business operations and safety require limiting employment to those individuals with a BMI of 39 or below.

Finally, to succeed under a business necessity defense, the claimed risk to the health or safety of others cannot be eliminated by reasonable accommodation. *Gaus*, 2011 WL 4527359, at *30. BNSF argues that the risk it is most concerned about is that a morbidly obese individual would someday unwittingly develop a secondary disease and as a result, will suffer an episode of incapacitation at work related to the secondary disease. Aside from the obvious lack of documented

27

medical support for BNSF's fear of sudden incapacitation, reasonable accommodations exist to mitigate this supposed risk. BNSF could require morbidly obese employees in safety sensitive positions to undergo periodic physical examinations for the purpose of discovering and treating secondary disease. On that basis, it makes no sense for an employer to treat an employee with diabetes, for example, more favorably than the employee whom it fears will develop diabetes.

## B. BNSF failed to prove that Morriss's morbid obesity was transitory and minor.

BNSF's amici argue a second affirmative defense that was abandoned by BNSF on appeal: the transitory and minor defense. Again, this Court should not even consider whether BNSF met its burden to prove a transitory and minor claim on appeal on account of BNSF's failure to properly plead any such claim in the lower court. (APP 17-19); Fed. R. Civ. P. 8(c); *First Union Nat. Bank,* 477 F.3d at 622.

BNSF's amici argue that Morriss's morbid obesity is a transitory and minor impairment because Morriss's morbid obesity "could change" over time. EEAC Brief 24. This argument completely ignores the statutory language defining a "transitory impairment." The ADAAA only considers an impairment to be transitory when the actual or expected duration of the impairment is 6 months or

less, not that the impairment be immutable or unchanging. 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.15. The broader interpretation advocated by BNSF's amici would seem to make almost every impairment transitory. Individuals with diabetes, hypertension and even cancer often experience changes in their conditions related to medical treatments and medication. More importantly, BNSF presented no evidence to the District Court that Morriss's extreme obesity lasted less than six months or that his condition was expected to last for less than 6 months. However, Morriss presented evidence showing that his morbid obesity had an actual duration of longer than six months. (APP 400, 426, 1022, 1030, 1034, 1341, 1070; 1670). Morriss's evidence also showed that given his medical history, there was no expectation that Morriss's morbid obesity would be resolved within six months. (APP 113, 400-1, 426).

BNSF's amici also argue that Morriss's morbid obesity is transitory because Morriss had the ability to "control and manage" his condition. EEAC Brief 24. While it is clear that BNSF and its amici would like the Court to believe that morbid obesity is simply a lifestyle choice, there is no evidence Morriss had the ability to control and manage his extreme obesity. The fact that BNSF and its amici make this argument without any medical or other secondary support just illustrates how much their perception of Morriss, and other morbidly obese individuals, is influenced by bias, stereotypes and unfounded fear. Morriss's

29

documented needed medical intervention to treat his morbid obesity and the medical literature provided by BNSF's own expert unequivocally refute the proposition that Morriss's obesity was a choice.

Finally, to establish this defense "a covered entity must demonstrate that the impairment is both 'transitory' **and** 'minor.'" 29 C.F.R. § 1630.15. (emphasis added). BNSF also fell short in establishing that Morriss's morbid obesity was "minor." Especially in light of the fact that this defense to the regarded as prong "should be construed narrowly," as the intent of this exception is to prevent litigation over minor illnesses and injuries, such as the common cold, that were never meant to be covered by the ADA. H.R. Rep. 110-730, pt. 1, at 14; 154 Cong. Rec. H6067 (2008). BNSF and its amici cite no evidence indicating that Morriss's obesity should be considered minor like a common cold or flu. In fact, BNSF goes to great lengths to convince this Court that Morriss's morbid obesity puts him at such "extreme risk" for secondary diseases that he is an immediate danger to himself and others. BNSF's position on this defense is logically inconsistent with maintaining that Morriss's morbid obesity is a minor condition.

## CONCLUSION

BNSF seeks to have this Court engage in technical and detailed analysis of whether Morriss was disabled. In doing so, BNSF ignores the sweeping effects of the ADAAA where disability is to be broadly defined and emphasis should always

Appellate Case: 14-3858     Page: 35     Date Filed: 06/09/2015 Entry ID: 4283616

be viewed in light of the conduct and perceptions of employers' employment decisions. Nevertheless, Morriss's extreme obesity is an actual impairment. His morbid obesity was outside normal range and had a physiological effect on his body systems. Moreover, it is without question that BNSF perceived Morriss's extreme obesity as affecting his body systems. Such is why he was labeled a current health and safety risk. BNSF's arguments relating to certain affirmative defenses are unavailing. Therefore, this Court should reverse the District Court's Order. As a matter of law, Morriss was disabled, or at the very least, there is a jury question as to whether Morriss was actually impaired or that BNSF perceived his extreme obesity as an impairment.

MELVIN A. MORRIS, III, Appellant

BY: /s/ Ari D. Riekes
Ari D. Riekes, #23096
MARKS CLARE & RICHARDS, L.L.C.
11605 Miracle Hills Drive, Suite 300
Omaha, NE 68154-8005
(402) 492-9800
fax: (402) 492-9336
E-mail: ariekes@mcrlawyers.com

-and-

BY: /s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760

31

DYER LAW, P.C., L.L.O.
10730 Pacific Street, Suite 111
Omaha, NE 68114
(402) 393-7529
fax: (402) 391-2289
E-mail: jennifer@dyerlaw.com
Attorneys for Appellant

32

Certificate of Compliance with Rule 32(a)

1.  This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 6,999 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

3.  This brief complies with the requirements of Fed. R. App. P. 28A(h) because they have been printed into a PDF format and the files have been scanned for viruses and are virus-free.

/s/ Jennifer Turco Meyer

Attorney for Plaintiff/Appellant

Appellate Case: 14-3858    Page: 38    Date Filed: 06/09/2015 Entry ID: 4283616

Certificate of Service

I hereby certify that on June 8, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 8, 2015

/s/ Jennifer Turco Meyer

Attorney for Plaintiff/Appellant

Appellate Case: 14-3858    Page: 39    Date Filed: 06/09/2015 Entry ID: 4283616